**In re George MISSOURI and Marion Missouri, Debtors.**

**Bankruptcy No. LR 81–869.**

United States Bankruptcy Court, E. D. Arkansas, W. D.

Aug. 9, 1982.

Robert J. Brown, Little Rock, Ark., for debtors.

ORDER ABSTAINING FROM AND AC-
CORDINGLY DISMISSING CHAP-
TER 11 PROCEEDINGS WITH PREJ-
UDICE

DENNIS J. STEWART, Bankruptcy
Judge.

This chapter 11 case was commenced nearly a year ago, on August 28, 1981, with the filing of a petition for relief on that date by counsel for the debtors.

Schedules of debts and assets were not filed until nearly two months later, on October 6, 1981.[1] Despite the provisions of Rule 11–30 of the Rules of Bankruptcy Procedure, which provides for the filing of monthly operating statements,[2] the debtors filed no operating statements until May of 1982. This was so, even though the clerk of the bankruptcy court transmitted written requests, under the dates of November 3, 1981, January 28, 1982, and March 29, 1982, to counsel for the debtor to the effect that he should file the operating reports.

Ultimately, on May 3, 1982, the court entered its order directing the debtors to show cause within 12 days why this case should not be dismissed for failure to timely file verified operating reports. Only then, on May 14, 1982, did the debtors make any attempt to file operating reports. On that date, they filed a report purporting to consolidate income and expenses for the period from "August 24, 1982, [sic] through April 30, 1982." It was not contended that the debtors had requested or obtained leave of court to file their operating reports late and in consolidated form. Rather, their counsel stated that the delay was justified by his determination that the case should not

"move forward" while a claim of an insurance company was being litigated. But now that "[t]he claim has now been allowed as a general unsecured claim and removed as a lien against the homestead of the debtors . . . the case is now in a posture to move forward."

The failure and refusal to file monthly operating reports was further aggravated by the failure and refusal to file any meaningful plan of reorganization or any disclosure statement. A skeletal form of a plan was filed on December 28, 1981. It revealed nothing respecting the treatment of specific claims against the estate, but rather only generally divided claims into three classes and proposed to pay secured claims "in accord with the requirements of those contracts," to pay unsecured claims of less than $2500.00 upon confirmation, and to pay unsecured claims of more than $2500.00 over a period of fifteen years. Priority claims were to be paid over a six-year period. Nothing was stated respecting the means for implementing the plan from which the court could gauge its merit or feasibility. And no disclosure was filed, without which it was impossible for the case to move toward confirmation under §§ 1125—1129 of the Bankruptcy Code. This was so even though the debtors had but 180 days after the commencement of the chapter 11 proceedings in which to achieve confirmation of a plan, unless that period was extended by the court, after a showing of good cause. See § 1121(b), (c)(3), (d) of the Bankruptcy Code.

This court therefore entered its order on May 21, 1982, conditionally dismissing this case unless the debtors filed their disclosure statement within 12 days.

---

1. Rule 108(b) of the Rules of Bankruptcy Procedure provides for the filing of schedules and statement of affairs "with the petition" but in no case more than 20 days thereafter, even with leave of court, which was never sought or granted.

2. Rule 11–30 of the Rules of Bankruptcy Procedure provides as follows:
   "Bankruptcy Rule 218 applies in Chapter XI cases, except that (1) the written report of the financial condition of the estate shall be made by the trustee, receiver, or debtor in possession within a month after the filing of a petition commencing a Chapter XI case and every month thereafter, and shall include a statement of the operation of the business for the preceding month and, if payments are made to employees, the amounts of deductions for withholding and social security taxes and the place where such amounts are deposited and (2) the court may excuse the filing of a final report and account by the trustee or receiver, and a debtor in possession need not file a final report and account unless ordered to do so by the court."

By June 17, 1982, the debtors had not filed any disclosure statement and the court, therefore, in accordance with the conditions of its order of May 21, 1982, entered its order dismissing these chapter 11 proceedings.

Thereafter, on June 28, 1982, still without filing any disclosure statement and without filing monthly operating reports which were now past due, counsel for the debtors filed a "motion for rehearing and motion to set aside order of dismissal," complaining that no hearing was held prior to the dismissal on 20 days' notice to the debtors and that the court should grant the debtors "a reasonable period of time during which to appropriately modify their plan and disclosures in this case or during which to convert to a proceeding Chapter 13 of the National Bankruptcy Code . . ."

On July 13, 1982, the court granted reconsideration of the order of dismissal and directed notice to the debtors and creditors to show cause in writing within 15 days why this case should not be dismissed as a matter of unreviewable abstention under § 305 of the Bankruptcy Code. In that order, the following considerations were stated:

"By means of its former order in this chapter 11 case, the court dismissed the debtors' petition for relief on grounds of delay prejudicial to creditors. This *sua sponte* action by the court followed upon a long history of noncompliance by the debtors with disclosure requirements imposed by local rules and the governing statutes. Thus, for some nine months after the filing of the petition, (which was filed on August 28, 1981), the debtors failed to file monthly operating reports disclosing the amount of their monthly income and its sources and the amount and categories of their monthly expenses. And, despite the requirement of the Code that they file a disclosure statement and proposed plan within 120 days of the commencement of the proceedings and achieve confirmation of a plan within 180 days of the commencement of the proceedings, the debtors made no recognizable, appreciable attempt in either respect.

Under such extreme circumstances, filled with such danger to the rights of the affected creditors, it must be regarded within the inherent power of a court to dismiss the proceeding for want of prosecution. See, e.g., *Flaksa v. Little River Marine Construction Co., Inc.*, 389 F.2d 885, 887 (5th Cir. 1968), to the following effect: 'It is well established that the district court has the authority to dismiss or to enter default judgment, depending on which party is at fault, for failure to prosecute with reasonable diligence or to comply with its orders or rules of procedure. While the authority is reiterated in some of the Federal Rules of Civil Procedure for particular situations, the power is one inherent in the courts "in the interest of the orderly administration of justice." It may be exercised *sua sponte* under proper circumstances.' The power of the bankruptcy court to dismiss a chapter 11 case on its own initiative is further confirmed by the legislative history under § 1112 of the Bankruptcy Code, 5 *Collier on Bankruptcy* 1112–3 (1981), which reads as follows:

'Subsection (b) gives wide discretion to the court to make an appropriate disposition of the case *sua sponte* or upon motion of a party in interest, or the court is permitted to convert a reorganization case to a liquidation case or to dismiss the case, whichever is in the best interest of creditors and the estate but only for cause. Cause may include the continuing loss to or dimunition of the estate of an insolvent debtor, the absence of a reasonable likelihood of rehabilitation, the inability to effectuate a plan, unreasonable delay by the debtor that is prejudicial to creditors, failure to file a plan within the appropriate time limits . . .'

Without such power, a chapter 11 court would have to tolerate every imaginable abuse of the provisions of chapter 11 without any estimable power to halt it, unless a creditor should happen to request relief in respect to it. Nor can it conceivably be so, as has been contended, that it is sufficient for the court to stand by and

await such an application by an affected creditor. It is contended that, if none of the creditors have any complaint with the course of the proceedings, no matter how extreme the delay or other abuse, the court should not disturb the proceedings. But the invalidity of such a proposition is particularly reflected in such a case as that at bar, in which long delay is accompanied by a long period of nondisclosure, a situation not contemplated by the statutes and rules. Under such circumstances, nonintervention by the court only enhances the daily increasing possibility of the worst abuses. And creditor inaction cannot be, under such circumstances, ensured not to be simply the result of creditors' being misinformed or uninformed. It was the purpose of § 1125 of the Bankruptcy Code, in requiring the timely submission of a disclosure statement, to prevent fraud and abuse, the opportunities for which are promoted by the court's nonintervention during a long period of delay accompanied by nondisclosure.

Therefore, under the circumstances which have been detailed above and in the now-challenged order of dismissal, the dismissal of this case was eminently proper. The debtors, however, move for reconsideration on grounds of lack of notice to creditors and absence of a hearing and other unmeritorious grounds. It is contended by them that they should now receive an opportunity to inaugurate chapter 13 proceedings. After nearly 11 months of keeping the automatic stay in effect without taking any recognizable step toward having a chapter 11 plan of reorganization confirmed and without disclosing any facts concerning the use and disposition of their money and property in the meantime, the debtors now contend that it is their right—not to be in any way qualified or fettered by the bankruptcy court—to convert the proceedings under chapter 13 of the Code. The possibilities of additional abuse should the court accede to this proposition are all too obvious.

Nevertheless, as a matter of grace and not of right, the court will grant reconsideration of its now challenged order of dismissal. Now that the debtors profess that it is in their best interest not to continue with a chapter 11 proceeding, the court should, on reconsideration, consider unreviewable abstention of these proceedings pursuant to § 305 of the Bankruptcy Code. For, under the foregoing principles, it would, without additional considerations, appear that the best interests of creditors would be served by abstention.

Therefore, the debtors and all creditors will be granted an opportunity to show cause why unreviewable abstention should not be ordered. In the absence of a response placing material facts in issue, the court will pass on the issue of abstention without an actual hearing. For due process does not require a hearing when there are no material facts in issue and a hearing would not serve any meaningful purpose. See, e.g., *Noorlander v. United States Attorney General*, 465 F.2d 1106, 1109 (8th Cir. 1972). And, 'hearing,' under the Bankruptcy Code, really only means 'opportunity to be heard.' See § 102(B)(i) of the Bankruptcy Code."

To that order, neither the debtor nor any creditor has interposed any response to the effect that abstention would not be proper. To the contrary, the creditor Ronnie A. Castera has filed a "motion to dismiss" in support of the proposed abstention, stating that the chapter 11 proceeding was filed only to avoid a judgment which he had obtained against the debtors in a state court; that "it seems clear that the debtors never intended to comply with the provisions of chapter 11, but merely filed this action to avoid creditors"; that "[t]he Debtors have abused the power of this Court in every way possible . . . [and] have failed to meet even the barest requirements of Chapter 11"; and that "it does not serve the interests of any party to allow a matter to be dormant for an extended period of time."

It further appears that, in avoiding Mr. Castera's judgment lien and the secured interest of the insurance company, the debt-

ors have achieved in these title 11 proceedings more than was merited by a long pattern of abuse. It can therefore be found that abstention is in the best interest of the debtors when, having achieved unmerited benefits through these proceedings, they now fail and refuse to comply with the clear responsibilities of a title 11 debtor. See *Buffington v. Adams*, 676 F.2d 703 (8th Cir. 1981). And the creditors are unquestionably benefitted by abstention and dismissal.

And finally, it must be mentioned that, if the court must stand idly by while the debtor refuses to make timely disclosure or to prosecute a title 11 case, the gravest of injustices, as in this case, may result. If court "calendars slip from ... direct [judicial] supervision and control, the result will be chaos." Flanders, Case Management in Federal Courts, 1981, The Justice System Journal 147, 148. The court for this fundamental reason cannot permit continued flagrant violation of its orders and the statutory directions of the Code. It is therefore

ORDERED that these title 11 proceedings be, and they are hereby, abstained from and dismissed with prejudice.