In the Matter of William Henry PIPER and Nellie Mae Piper, Debtors.

Bankruptcy No. 83–03289–SW–11.

United States Bankruptcy Court,
W.D. Missouri,
Southwestern Division.

Aug. 9, 1985.

ORDER DIRECTING JEFFREY R. MARCUS, ESQUIRE, TO RETURN TO DEBTORS THE ATTORNEY'S FEE PAID BY THEM

DENNIS J. STEWART, Bankruptcy Judge.

The within title 11 proceedings were commenced over 19 months ago when the debtor William Henry Piper, on December 12, 1983, filed a chapter 7 petition. At that time, the debtor was represented as counsel by Jeffrey R. Marcus. Among the debts sought to be discharged by that filing was a debt owed jointly by the debtor William Henry Piper and his wife to Val and Fleeta Mason, who hold a mortgage on the residence owned as entirety property by the debtor and his wife. In the course of the chapter 7 proceedings, the court, employing the doctrine of *In re Magee*, 415 F.Supp. 521 (W.D.Mo.1976), entered its order on November 20, 1984, staying the debtor's discharge in bankruptcy until the Masons could levy on the entirety property.[1]

Thereafter, the debtor and his spouse retained Jeffrey R. Marcus, Esquire, as their counsel. They then converted the chapter 7 liquidation case of William Henry Piper to a chapter 11 reorganization proceeding. A chapter 11 case was filed for

1. In that order, this court found, *inter alia* "there is considerable equity in [debtor's] property over and above [his] exemption rights and

[those of] his spouse to which the judgment lien may attach."

his wife, Nellie Mae Piper. Mr. Marcus did not, as the law requires,[2] request approval of the court for his entering the case as attorney for the debtors. The schedules which he filed on behalf of Mrs. Piper in her chapter 11 case were little more than replicas of those which Mr. Edwards had filed for Mr. Piper to commence the foregoing chapter 7 case.[3] The court, on April 4, 1985, entered its order directing the filing of monthly operating reports in accordance with the local rules of bankruptcy procedure and also directing the filing of a proposed plan of reorganization by the debtors within 30 days subsequent to April 4, 1985. This order was never complied with.

The failure of Mr. Marcus to file operating reports on behalf of the debtors and to appear at hearings set by the court in other cases and properly to seek his appointment in these cases prompted this court to enter its order on April 4, 1985, terminating Mr. Marcus' status as counsel for the debtors. In that order, this court set forth the following considerations.

"According to the file in this proceedings, Jeffrey R. Marcus, Esquire, commenced his representation of the debtor by filing an entry of appearance on March 4, 1985. In chapter 11 cases, however, the law requires that application be made to the court for appointment as debtor's counsel. 'The determination of this question is within the discretion of the court.' 2 Collier on Bankruptcy para. 327.01, p. 327–4 (15th ed. 1985). See also section 327 of the Bankruptcy Code."

Mr. Marcus then moved to vacate the order terminating his appointment and, with his motion,[4] filed an application for appointment of counsel. Accordingly, this court, April 12, 1985, entered its order conditional-ly appointing Mr. Marcus as counsel for the debtors on condition that he repair the defaults which had occurred in his representation of the debtors. The court thus provided in its order conditionally approving Mr. Marcus' appointment as follows:

"In support of his contentions in this regard, he cites the decision in *In re King Electric Company*, 19 B.R. 660, 663 (Bkrtcy.E.D.Va.1982), to the effect that an application for retention as counsel *nunc pro tunc* should not be denied without any reasons being assigned for the denial. But that decision is not applicable to the matter now at bar, in which the court has not previously been granted an opportunity to *act on* an application because it has not previously been filed. The court must be granted an opportunity to exercise its discretion before an abuse of discretion can logically be charged. And in the case relied upon by counsel, *In re King Electric Company, supra*, at 661, it is not questioned that 'an application to employ professional persons must be filed by the debtor in possession.' And, in acting upon that application, the bankruptcy court is directed by applicable law to consider whether 'the attorney's special professional skills are necessary for the protection and benefit of the estate and for the furtherance of the aims of the case.' 2 Collier on Bankruptcy para. 327.01, p. 327–3 (15th ed. 1985).

"In order to be assured, therefore, that counsel will aid in the administration of the case, if appointed, this court will conditionally grant the application now placed before it on condition that: (1) within 15 days of the date of entry of this order the applicant counsel states under oath and in writing a satisfactory

2. In chapter 11 cases, the law requires that application be made to the court for appointment as debtor's counsel. "The determination of this question is within the discretion of the court." 2 Collier on Bankruptcy ¶ 327.01, p. 327–4 (15th ed. 1985).

3. The same debts and assets are listed on both sets of schedules and virtually all the other material entries are substantially identical.

4. Contemporaneously with his application for appointment of counsel, Mr. Marcus filed a conclusionary motion for disqualification of the undersigned, apparently oblivious of the requirement that, in order to compel recusation, facts must be stated which demonstrate bias or prejudice. The motion was denied by order of this court entered on April 12, 1985.

explanation for his nonattendance at the hearing scheduled for April 2, 1985, in Joplin, Missouri, in the case of *Johnnie Marion Rutherford,* In proceedings for reorganization under chapter 11 of the Bankruptcy Code No. 84–02395–SW–11, on the issues of dismissal and sufficiency of the proposed disclosure statement, and a satisfactory reason for his failure to send out the notice of the hearing on sufficiency of the disclosure statement according to the clerk's written instructions; (2) that he submit a detailed statement of his legal services in accordance with the court's prior order of April 4, 1985, together with disclosure of fees paid and promised him; and (3), since he requests in his application that the court pre-authorize a 'general retainer at the rate of $90 per hour,' an hourly rate which is somewhat in excess of the $70 per hour which is currently considered the average in bankruptcy cases, a list of chapter 11 cases in which he has served as counsel in this court in the past two years, so that the court may make an appraisal of his special skills and determine whether they are necessary for the protection and benefit of the estate and for the furtherance of the aims of the case. These last two conditions should be accomplished within 20 days of the date of entry of this order."

Mr. Marcus, however, failed and refused to comply with any and all of the conditions imposed by the court. Rather than do so, he wrote the court a letter dated May 6, 1985, requesting an *ex parte* conference on the "handling" of this and other cases.[5] The court declined to attend the requested conference and advised counsel that he should comply with the court's outstanding orders.[6] Mr. Marcus, however, continued to ignore the orders of the court.

---

5. Mr. Marcus' letter of May 6, 1985, to the court is as follows:

"There have been some recent issues arise in the handling of cases we have filed on behalf of debtors in your division. Bill Davis and I would appreciate the opportunity to discuss the same with you. We would appreciate it if someone on your staff would call to schedule a meeting at the time and place convenient to you. Thank you."

6. The court, in its letter to Mr. Marcus of May 8, 1985, stated as follows:

"I have your hand delivered letter dated May 6, 1985, inviting me to have a conference with you and Mr. Davis respecting the 'handling' of the above cases. [Johnnie Marion Rutherford—Case No. 84–02395–SW–11, William Henry Piper—Case No. 83–03289–SW–11 and Nellie Mae Piper—Case No. 85–00582–SW–11] I am astonished that you would compound the steady train of improprieties which you have practiced in these cases by now inviting me to participate with you in an *ex parte,* illegal, *sub rosa* conference respecting their 'handling.' It seems that, as a lawyer, you should know that it is a violation of the canons of judicial conduct for a judge to participate in such conferences as you now propose with respect to these pending cases. I shall retain a copy of your letter as direct autoptical evidence of your attempting to lure me into an impropriety in this regard.

"Even if I could set a hearing on a topic as vague as that which you suggest—'recent issues' in the 'handling of cases'—I could not, based on your past performance, have even minimal confidence that you would attend it.

As you must only too well recall, a hearing was set on prior notice to you on April 2, 1985, in Joplin, on the issue of sufficiency of the disclosure statement in the *Rutherford* case and the motion of certain creditors to dismiss that case. Contrary to the written instructions of the clerk of the bankruptcy court, you failed to transmit the notice to any of the other interested parties. Then, rather than notify the court of your failure to do so, you telephoned my secretary on April 1, 1985, to indicate that you would be present for the hearing on the following day. Although your subsequent nonappearance, in this context, appeared to be a deliberate and calculated provocation, I elected not to conclude that it was such and thereby to regard it as a matter of contempt. Rather, when I was unable to contact you for an explanation and it appeared from other facts that you wished to be terminated as counsel, I entered the order of April 4, 1985, deeming your wish to be terminated as an adequate explanation for your failure to appear for the hearing.

"When you advised me to the contrary through your motion for reconsideration, I obligingly vacated the order of termination and reinstated you. Further, I enlarged the time, without requiring a formal request for such enlargement, in which you could submit a detailed statement in support of your attorney's fees. Your application, however, when filed, was more of a slap at the court than it was a detailed statement of legal services, consisting in the major part of an irrelevant reassertion of a motion for disqualification which had previously been denied and an

Ultimately, on May 6, 1985, the creditors Val and Fleeta Mason moved to dismiss the cases on the general grounds that the debtors had not complied with any of the foregoing orders of the court and principally that they had not filed a proposed plan of reorganization within the time limit fixed by the court within the meaning of § 1112(b)(4) of the Bankruptcy Code. The court, on May 7, 1985, issued its order setting a hearing for June 7, 1985, at 2 p.m. in Joplin, Missouri, on the motion to dismiss. Service of a copy of that order was had on Mr. Marcus by registered mail, return receipt requested.[7] Despite the fact that the failure to file a proposed plan constituted definitive cause, under § 1112(b)(4), *supra,* for dismissal of these proceedings, Mr. Marcus did not use the time intervening before the scheduled hearing to prepare and file a proposed plan.

Rather, he filed a brief, poorly-composed, and frivolous set of suggestions in opposition to the motion to dismiss.[8]

On June 7, 1985, the date on which the hearing on the motion to dismiss was set, the court sought to convene the hearing at 2 p.m. in the Joplin courtroom. At that time, the movants appeared personally and by counsel, Daniel E. Scott, Esquire, and the debtors also appeared personally, but their counsel, Mr. Marcus, did not appear. They then stated to the court that they had been advised by Mr. Marcus to meet him outside the Joplin courtroom at 1:30 p.m.; that they had appeared at that time and Mr. Marcus had not appeared; that Mr. Marcus had not advised them of any change of plans in this regard; that they had complied with Mr. Marcus' every request and instruction since he first purport-

ungrounded assertion that this court's order of April 4, 1985, was directly responsible for Mr. Rutherford's obtaining new counsel. The former reasserted motion is 'impertinent' within the meaning of Rule 11 of the Federal Rules of Civil Procedure, and therefore subject to being stricken. Matter 'unnecessarily pleaded [or] paragraphs seeking to retry a previous action ... may be stricken." 2A Moore's Federal Practice ¶ 12.21, pp. 2424, 2425 (1985). And it is lamentable that, in connection with such reassertion, you advised your client to execute an affidavit to the effect that I have a 'personal' prejudice against you, a subject of which he could have no knowledge. Finally, in respect of your assertion that it was the court's order of April 4, 1985, which planted the germ of dissatisfaction with your services in the *Rutherford* case, I can only remind you in this regard that, as far back as February 25, 1985, your co-counsel, Mr. Gottschall, filed 'suggestions in opposition to application to dismiss,' in which he reported, *inter alia,* that 'Debtor has expressed to Attorney Gottschall his desire to retain a new Attorney for the purpose of handling this Bankruptcy matter.' So your remarks in this regard, as well as being irrelevant to the matter in which you were requested to respond, are also wholly gratuitous.

"Nevertheless, I really desire to give you the benefit of a doubt. If a good faith and conciliatory intent lies behind your letter of May 6, 1985, I am willing to advise you that all you need to do in your future 'handling' of cases is to comply with the governing statutes and rules and the outstanding orders of the court. Even as this is being written, the files of the court purport to show that you are currently

out of time in the Piper cases (1) in filing a statement of affairs and schedules, (2) in filing monthly operating reports, (3) in filing a proposed plan of reorganization and disclosure statement, (4) in filing a detailed statement supporting your attorney's fees, (5) in filing a written explanation for your failure to appear before the court for the hearing of April 2, 1985, in the *Rutherford* case, and (6) in failing to file a resume of your past experience in support of your request to charge your client attorney's fees at the rate of $90 per hour. This last requirement was intended by me to be one of liberality and generosity toward you and was accordingly made in terms of your prior experience in this court so that you might have an opportunity to explain circumstances like those which prompted Judge Barker in *Midwest College of Medical Assistants, Inc.,* No. 82–01122–1–11, to have co-counsel replace you as attorney for the debtor in that case. Although your defaults as of this time are many and serious, if you will bring yourself into compliance with the court's orders within the next ten days, it is possible that your firm may be able constructively to prosecute the *Piper* cases with benefit to your client."

7. And there is no question that Mr. Marcus knew of the setting of the hearing for June 7, 1985, at 2:00 p.m.

8. This "response to motion to dismiss" was filed on May 20, 1985. Virtually all it says is that "there has been absolutely no evidence of an absence of reasonable liklihood [sic] of rehabilitation" and that "dismissal of the chapter 11 proceeding is not in the best interest of creditors of the estate."

ed to have become their counsel, but that he had failed to file operating statements or a plan of reorganization or disclosure statement or otherwise to comply with the orders of the court and that they therefore requested that Mr. Marcus' appointment as counsel be terminated; that they be granted a refund of the $2,000 retainer they had paid him; and that they be granted an opportunity to obtain other counsel who would assiduously prosecute these proceedings for them. Counsel for the creditors Mason requested immediate dismissal of the chapter 11 proceedings or, in the alternative, relief from the automatic stay. As this request was being made, the proceedings were interrupted by the intrusion of Charles Lonardo, Esquire, who stated that he had been telephoned by Mr. Marcus at about 12:15 p.m. on June 7, 1985, who related to Mr. Lonardo that he had fallen ill with the "24-hour flu" and would be unable to attend the scheduled hearing. According to Mr. Lonardo, Mr. Marcus requested that Mr. Lonardo attend the hearing scheduled for 2 p.m., not in the capacity

of counsel for the debtors, but rather only as a "messenger" of Mr. Marcus for the sole purpose of "requesting a continuance." The debtors stated that they had received no prior word from Mr. Marcus respecting his alleged illness or his intention not to attend the 2 p.m. hearing, although they had been available for such.[9] They repeated their request that Mr. Marcus be "dismissed" as their counsel and that the retainer which they paid him should be refunded to them. The court, by written order thereafter, granted the debtors time to obtain new counsel, which they have now retained.[10]

On the basis of the foregoing facts, which are conclusively established by the files and records in this case, this court has little alternative but to direct the return of the $2,000 retainer paid by the debtors to Mr. Marcus to the debtors. Under the provisions of Rule 2017 of the Rules of Bankruptcy Procedure, the bankruptcy court is required, on its own initiative, if

---

**9.** If Mr. Marcus was still ill at the time of his telephone call to Mr. Lonardo, it seems unlikely that he would have known that his flu was about to terminate in time to be called the "24 hour flu." And if it should be his contention that he had recovered earlier, then he should have been able to make it to Joplin for a hearing—perhaps with a telephone call to request a slightly later hearing time. In that instance, also, he should have had time to phone his clients earlier and advise them of his inability to attend.

**10.** The court's order of June 11, 1985, noted that, "[u]nder ordinary circumstances, either dismissal or grant of relief from the automatic stay would be appropriate. The files and records demonstrate that the debtors have not filed any proposed plan and disclosure statement within the time prescribed by a prior order of this court. And section 1112(b)(4) of the Bankruptcy Code authorizes dismissal or conversion for 'failure to propose a plan under section 1121 of this title within any time fixed by the court.' Further, in a prior adversary action filed at a time when only *William Henry Piper* was in these title 11 proceedings, *Mason v. Piper*, Adversary Action No. 84–0175–SW (Bkrtcy.W.D.Mo. Nov. 20, 1984), the movants established that there was an equity which their judgment lien might attach to and fully cover. Accordingly, they were granted relief from the automatic stay under the doctrine of *In re Ma-*

*gee,* 415 F.Supp. 521 (W.D.Mo.1976), in order to enforce their judgment lien against the joint property of the debtors. In the absence of a timely proposed plan which proposes to deal with the joint debt which was the subject of that relief from the automatic stay, the movants should again receive relief from the automatic stay. For these title 11 proceedings have now pended for well more than a year and the movants have not been paid any adequate protection money or other value by the debtors.

"But, in the hearing of June 7, 1985, the debtors contended that they were free of fault; that the fault lay at the door of their counsel, with whom they have cooperated in every respect; that they in fact were told by him to meet him 30 minutes before the hearing of June 7, 1985, in Joplin, but he failed to appear; and that they in fact had no advance notice of Mr. Marcus's suddenly taking ill at about noon on the day of the scheduled hearing with the '24 hour flu.' "The court cannot freely saddle debtors with the malperformance and nonperformance of their counsel. Accordingly, at the request of the debtors made in the hearing of June 7, 1985, and otherwise for failure of Mr. Marcus to comply with the court's prior orders, an order will now be entered terminating his appointment as counsel for the debtors. If and when the debtors retain substitute counsel, the court may go forward with their request to have their $2,000 retainer returned to them."

necessary,[11] to examine debtors' transactions with their attorney and reduce or avoid payments to such attorneys which are made in violation of the governing provisions of the bankruptcy laws.[12] In this case, the foregoing facts [13] show that the entire retainer of $2,000 should be returned to the debtors for the separate and independent reasons of (1) Mr. Marcus' misconduct and (2) Mr. Marcus' failure to perform any compensable services.

## Misconduct

 It is patent that misconduct of counsel is a firm ground for requiring forfeiture of attorney's fees. "Improper conduct on the part of an ... attorney has frequently been penalized by withholding compensation or reimbursement or both. Not only the statute and the Rules provide for this type of penalty, but courts have repeatedly used it as the most effective weapon against malpractice...." 3A Collier on Bankruptcy ¶ 62.05 [5], p. 1431 (14th ed. 1979). Mr. Marcus' misconduct is plainly evident from the foregoing facts. He failed and refused to propose a plan of reorganization for the debtors, although successive orders of the court required him to do so. He failed to comply with the orders of the court which related to his appointment of counsel and instead attempted to lure the court into an impropriety.[14] And he failed to appear at the hearing set for June 7, 1985, on the motion of the creditors Mason to dismiss these chapter 11 proceedings, nor did he timely request a continuance of the hearing based on his illness. In this regard, it must be observed that it is a three-hour drive from Kansas City to Joplin and that, therefore, if Mr. Marcus fell ill at or about 12:15 p.m., when Mr. Lonardo claims he first was telephoned by Mr. Marcus, then Mr. Marcus must have fallen ill after he had already formed an intention not to attend the 2 p.m. hearing. If he fell ill earlier, there is no excuse for his not advising the court and the clients, by telephone at least, of his inability to attend. Further, it is greatly curious that Mr. Marcus was able, even in the midst of his supposed illness, to predict that it would last no more than 24 hours.

But the most pernicious form of misconduct was Mr. Marcus' failure to perform any services for his clients even after he had taken their not inconsiderable cash retainer of $2,000. The courts of the United States cannot stand by and permit unscrupulous counsel to take from debtors their last available cash and leave them stranded in the middle of a case which is only dismissible because of counsel's defaults—defaults which, in view of the court's repeatedly and explicitly reminding counsel of his duty to perform,[15] can only be regarded as deliberate, calculated, wilful and consonant with an intention to do no more than guard the retainer fee which was already in his custody. This blatant conduct constitutes an eyesore to those who view the legal profession objectively and it will work to the prejudice of that profession unless the courts correct it.[16] Therefore, on the grounds of misconduct, this court

---

11. Rule 2017 provides as follows:
 "On motion by any party in interest or on the court's own initiative, the court after notice and a hearing may determine whether any payment of money or any transfer of property by the debtor, made directly or indirectly and in contemplation of the filing of a petition under the Code by or against the debtor, to an attorney for services rendered or to be rendered is excessive."

12. See note 11, *supra.*

13. The files and records are conclusive on this matter. The disservice performed by Mr. Marcus appears quite plainly as a matter of record. To set a hearing on this matter would only give him another opportunity to flout the orders of the court.

14. See notes 5 and 6, *supra.*

15. See note 6, *supra.*

16. It is an ordinary duty of trial courts to ensure counsel's compliance with canons of ethical conduct in the cases in which they appear before those trial courts.

must order Mr. Marcus to return the $2,000 retainer fee to the debtors.

### Excess Compensation

■ The separate and independent reason for requiring return of the retainer also appears from the record. The only two documents of any substance [17] filed by Mr. Marcus on behalf of the debtors were (1) the schedules filed in Mrs. Piper's case and (2) the suggestions in opposition to the Masons' motion to dismiss which, as noted above, were poorly drafted and frivolous [18] and which were not accompanied by the filing of any proposed plan or disclosure statement or any other compliance with order of the court. These efforts, inappropriate and shoddily accomplished, cannot provide the basis for the awarding of any compensation under the applicable standards.[19]

Therefore, for the foregoing separate and independent reasons, it is hereby

ORDERED that Jeffrey R. Marcus, Esquire, under pain of citation for contempt of court, restore the sum of $2,000 plus interest at 9% per annum [20] from February 4, 1985, to the debtors within 25 days of the date of entry of this order.

---

**17.** The other documents which were filed were solely comprised of Mr. Marcus' requests for extensions of time which were necessitated by his own many and varied defaults and, when extensions were granted by the court, compliance was still not forthcoming from Mr. Marcus.

**18.** See note 8, *supra.*

**19.** Under the current Bankruptcy Code the paramount measure of attorney's fees is the benefit conferred upon the estate. Absolutely no benefit was conferred by Mr. Marcus' "services." In fact, detriment was worked upon both the debtors and creditors. Mr. Marcus simply took a retainer and then refused to do anything more except so much as he conceived of as being necessary to protect his supposed right to that retainer.

**20.** See § 408.020, RSMo.