**In the Matter of Tom O. SLACK, and Linda H. Slack, Debtors.**

**Bankruptcy No. 87–00031–W–12.**

United States Bankruptcy Court, W.D. Missouri, W.D.

April 27, 1987.

ORDER DECLINING TO APPOINT DOUGLAS L. WINCHESTER, ESQUIRE, AS COUNSEL FOR DEBTORS, DIRECTING THE RETURN OF RETAINER TO DEBTORS AND GRANTING DEBTORS 25 DAYS IN WHICH TO RETAIN SUCCESSOR COUNSEL

DENNIS J. STEWART, Chief Judge.

Currently pending before the court is the issue of appointment of counsel for the debtors, which the court took under advisement in consequence of the hearing held on April 9, 1987. It is established in the law that the bankruptcy court must approve the appointment of counsel for a debtor in a chapter 12 as in as chapter 11 case. See § 327 of the Bankruptcy Code; *Matter of Rutherford*, 54 B.R. 784 (Bkrtcy. W.D.Mo.1985); *Matter of Piper*, 52 B.R. 600 (Bkrtcy.W.D.Mo.1985). The standard to be observed in determining whether a certain applicant should be appointed is whether the appointment will aid in the administration of the proceeding. *Matter of Piper, supra,* at 601

> "[I]n acting upon that application, the bankruptcy court is directed by applicable law to consider whether 'the attorney's special professional skills are necessary for the protection and benefit of the estate and for the furtherance of the aims of the case.' 2 Collier on Bankruptcy para. 327.01, p. 327–3 (15th ed. 1985)."

The relevant facts of the applicant's practice before this court do not admit of a finding that applicant's appointment would aid in the administration of this case. Only days before the hearing of April 9, 1987, in

this case, applicant counsel was scheduled to attend a hearing on confirmation of a chapter 11 plan at 2 p.m. on March 31, 1987, in Joplin, Missouri, in the capacity of debtors' counsel. This was the case styled *Matter of Chambers*, In proceedings for reorganization under chapter 11 of the Bankruptcy Code No. 86–04782–SW–11 (Bkrtcy.W.D.Mo.) The court had previously set the time and date of that hearing orally in the presence of counsel and had followed the oral order with a written memorial of it which was timely served upon counsel by mail.[1] Nevertheless, as of the date and time of that scheduled hearing, counsel failed to appear, although his clients did appear, stating that counsel had previously expressed to them an intention to be present. Nor did counsel, timely or otherwise, request a continuance of the hearing; nor did he state to the court at any time before or since the hearing any reason for his nonappearance. These circumstances compelled the court to issue its orders [2] terminating counsel's appointment as counsel for debtor in that case.[3]

**1.** The files and records of the court show that the court had previously held a hearing in the *Chambers* case on February 27, 1987, at which time the court orally set the hearing on confirmation for 2 p.m. on March 31, 1987. In addition, a written order establishing the same date and time for hearing was issued by the court on March 2, 1987.

**2.** The court issued an oral order on March 31, 1987, terminating Mr. Winchester's appointment as counsel for the debtors Chambers. A written order memorializing that order issued on April 16, 1987. The following considerations were stated therein:

"On February 27, 1987, in the presence of counsel for the debtors and the debtors themselves, this court announced continuance of the hearing on confirmation of the debtors' liquidating plan to March 31, 1987, at 2 p.m. in Joplin, Missouri. Later on March 2, 1987, this court issued a written order memorializing this oral order, to the following effect:

In the hearing of February 27, 1987, the court instructed counsel for debtor to amend the disclosure statement to place it on the forms supplied by the court and to transmit notice of hearing on sufficiency of the disclosure statement and confirmation to be held on March 31, 1987, at 2 p.m. in the U.S. District Courtroom, 3rd and Joplin Streets, Joplin, Mo."

[ ] If counsel's absence from the scheduled hearing in that case, albeit unexcused, were an isolated event, the court may not be foreclosed from finding in this case that his appointment would aid the court in administering this case. Unfortunately, however, his nonappearance of March 31, 1987, was only a repeated instance of such misconduct in this court, which has taken place on several prior occasions. In *Matter of Kleeman*, In proceedings for reorganization under chapter 11 of the Bankruptcy Code No. 85–00843–SW–11 (Bkrtcy.W.D. Mo.) applicant counsel, absented himself from a hearing set by the court on the sufficiency of a disclosure statement required by § 1125 of the Bankruptcy Code.[4] Although he knew of the setting of the hearing, he elected not to attend (and also advised the debtors not to attend), but rather to dispatch, without any authorization to do so, another attorney who had no connection with or knowledge of the case. This dereliction resulted in dismissal of the chapter 11 case. See *Matter of Kleeman*, 54 B.R. 62, 63 (Bkrtcy.W.D.Mo.1985), to the following effect:

"The records of this court plainly show that a copy of that order was served on counsel for the debtors. Nevertheless, on March 31, 1987, the debtors appeared for the hearing on confirmation of their proposed chapter 11 plan, but their counsel did not do so.

"It is necessary, therefore, to terminate the appointment of Douglas L. Winchester as counsel for the debtors. See, e.g., *Matter of Piper*, 52 B.R. 600, 605 (Bkrtcy.W.D.Mo.1985); *Matter of Rutherford*, 54 B.R. 784, 790 (Bkrtcy.W.D.Mo.1985). It cannot be concluded from his comportment to date in this case that the continued retention of Mr. Winchester as counsel for the debtors would aid in the administration of these chapter 11 proceedings."

**3.** See note 2, *supra*.

**4.** See also Rule 2002(b)(1) of the Bankruptcy Rules to the following effect:

"Except as provided in subsections (h), (i) and (k) of this rule, the clerk, or some other person as the court may direct, shall give the debtor, the trustee, all creditors and indenture trustees not less than 25 days notice by mail of the time fixed for filing objections to and the hearing to consider approval of a disclosure statement"

"The debtors did not appear, either personally or by their principal counsel in this case. They appeared only by local Joplin counsel who had not been sufficiently apprised of the relevant facts in order to be of any assistance in determining what should be disclosed in an amended and supplemented disclosure statement. The absence of the debtors and their principal counsel thus prevented the court from timely prosecuting these proceedings toward confirmation and unnecessarily inserted prejudicial delay into the case. Accordingly, orally on August 30, 1985, and in a written memorial filed on September 3, 1985, this court dismissed the within chapter 11 proceedings ... To require any less would be to give notice that chapter 11 debtors may always manufacture further extensions of time by failing to abide the orders of the bankruptcy court, then asserting that they will abide those orders if granted additional time in which to do so. The courts cannot afford to indulge litigants who would, in such a manner, regard their own cases as mere frivolities. Significant failures and refusals to prosecute cases in accordance with the orders of the court and general rules of procedure can only be answered with dismissals. Otherwise, the delay which is accompanied by nondisclosure—a situation which is of particularly pernicious effect in chapter 11 proceedings—is sanctioned and encouraged by the court. When 'delay is accompanied by ... nondisclosure ... nonintervention by the court only enhances the daily increasing possibility of the worst abuses.' *In re Missouri, supra,* [22 B.R. 600] at 603 [ (Bkrtcy.E.D. Ark.1982) ]. It is therefore the duty of the court to exact compliance with its own orders and the governing procedural rules and to impose the penalty of dismissal for failure to comply in significant respects.

"Numerous other creditors appeared for the hearing which was scheduled for August 30, 1985, and several of them came from considerable distances in the hope that the matter of the sufficiency of the disclosure statement could be expeditiously resolved. As it turned out, however, their expenditures of time and money in this regard were for naught. Only delay has ensued—a delay which would only be multiplied by the motion which is now before the court."

Despite the adverse result which was thus worked because of his failure to attend a hearing set by the court, the same counsel subsequently absented himself from two hearings in *Matter of Cook,* In proceedings for reorganization under chapter 11 of the Bankruptcy Code No. 86–00554-3-11 (Bkrtcy.W.D.Mo.). With respect to the first of these hearings, which had been set for February 25, 1986, applicant counsel, as in the *Kleeman* case, *supra,* elected not to attend the hearing, but rather to send unrelated counsel who had been contacted only shortly before the hearing and therefore, as he represented to the court, knew nothing about the case.[5]

5. The court, in an order filed on April 29, 1986, in the *Cook* case described counsel's derelictions as follows:

"The events which have to date transpired in this case clearly show that the counsel whom the debtors have tentatively selected for appointment have not to date performed in a manner which would betoken any promise of future benefits to the debtors, their creditors, or the court. Faced with an initial filing which was inadequate under the governing law, the court entered its order on February 10, 1986, setting a hearing for February 25, 1986, on the issues of appointment of counsel, compensation for the debtors, preliminary review of the potential plan of reorganization and the issue of the timing of its filing and that of a proposed disclosure statement, and compliance otherwise with the governing procedural rules. The court hoped that the failure of counsel—who reported that they had received a retainer of $3,000.00—to file appropriate motions at the commencement of the case might be cured by the taking of appropriate action in the hearing of February 25, 1986.

"Retained counsel did not appear, however, for the hearing of February 25, 1986. Rather, he sent the debtors to the hearing in the company of local counsel who had been contacted only shortly before the hearing and who knew nothing of the procedural or substantive posture of the case. This was done despite the particularity of the order of the court describing the subjects to be taken up at the hearing.

This made it impossible for the court to accomplish the purpose for which the hearing had been set.[6] Further, other interested parties were in attendance at the hearing and were unable to make the inquiries which they desired to make.[7] On yet a later occasion, applicant counsel did not appear for a hearing which had been set by agreement between him and counsel for the creditor Ozark Production Credit Association.[8] Again, the adverse party appeared but the court could not go forward with the hearing.[9] These defaults by applicant counsel in the *Cook* case led to its dismissal.[10]

> "Similarly, in the hearing in this case attempted to be carried out on February 25, 1986, the absence of counsel prevented any constructive measures from being initiated or completed. It was naturally impossible for recently contacted and unbriefed local counsel to give the court any reliable idea of when a plan could be filed, what it might provide, what compensation of the debtors was proper, what fees had been collected by retained counsel, and what the paramount aims of the debtors were in the context of the chapter 11 law. Nor could the questions of creditors be sufficiently answered, either generally or particularly, as to how they would or might be treated under the forthcoming provisions.
>
> "Only significantly later than the times established by the court in its order of February 28, 1986, did counsel for the debtors comply with its requirements. It was necessary for the court to set a hearing in Joplin, Missouri, on April 18, 1986, and require counsel for Central Production Credit Association to travel to that distant city in order to achieve a resolution of the adequate protection issue. And, even so, after resolution of that issue, counsel for the debtors immediately requested the court to set another hearing on another date on an emergency basis on the debtors' use of the cash collateral of the Central Production Credit Association so that the court can render a decision before the debtors' planting season must necessarily commence. Counsel also demands immediate hearings on all other pending issues including the sufficiency of the belatedly-submitted disclosure statement and confirmation of the proposed plan of reorganization. But these are matters which might have been earlier resolved had counsel deigned to appear for the hearings earlier set in Kansas City. Instead, counsel wants expedition only on his schedule, when his needs would seem to require it, and not by any means when it suits the schedule of the court or other parties. He has further inconvenienced his own clients, forcing them to appear for the Kansas City hearings for virtually no reason, for, as pointed out above, little

Again, in *Matter of Brubaker*, In proceedings for reorganization under chapter 11 of the Bankruptcy Code No. 85–03093–SW–11 (Bkrtcy.W.D.Mo.), applicant counsel failed to appear for a hearing scheduled for 4 p.m. on April 18, 1986, in Joplin, Missouri. This was so despite the fact that he had been present for a hearing in another case at 1 p.m. on the same afternoon [11] and had, after that hearing, advised the court that he proposed to attend all future hearings set by it.[12] The court was compelled to issue its order in that case terminating applicant counsel's appointment as counsel for the chapter 11 debtor.[13]

> or nothing could be achieved in is absence. Counsel has further plagued and hindered the movement forward of the chapter 11 proceedings by filing a defective motion for reconsideration of this court's prior order on relief from the automatic stay and an untimely appeal therefrom."

6. See note 5, *supra.*

7. Further, the record of that hearing demonstrates that the creditors present were desirous of having the debtors' plan summarized in a manner which would likely be done only by knowledgeable counsel.

8. The hearing was scheduled for April 2, 1986, allegedly, according to the representations of counsel for Ozark Production Credit Association, by his agreement with Mr. Winchester.

9. See note 2, *supra.*

10. By order entered on December 15, 1986, the amended motion of the the debtors to set aside the court's former order of dismissal was denied. The court in pertinent part stated as follows:

> "The tangled procedural history of the case at the time included a halting and unenthusiastic attempt by erstwhile counsel for the debtors to achieve confirmation of a plan of reorganization. But this attempt failed for failure to attain the positive vote of at least one actual assenting class."

11. The case of James Roger and Jadene Ruth Murray, In proceedings for reorganization under chapter 11 of the Bankruptcy Code No. 86–00988–SW–11.

12. The statements then made by Mr. Winchester to the court were made in chambers and off the record.

13. In the order entered on April 25, 1986, the court stated as follows:

Similarly, in *Matter of Longley,* In proceedings for reorganization under chapter 11 of the Bankruptcy Code No. 86–01579–SW–11 (Bkrtcy.W.D.Mo.), counsel's unexcused absence from a scheduled hearing on November 6, 1986, resulted in this court's issuing an order terminating his appointment as counsel in a chapter 11 case.[14]

So, the recent unexcused non-appearance of counsel in the *Chambers* case, *supra,* is not an isolated event, but rather the sixth unexcused nonappearance in the recent history of his practice before the bankruptcy court. The court has attempted to be liberal with applicant counsel and thus has granted him repeated chances to abandon the practice of missing scheduled hearings. But, if its rules of practice and procedure are to mean anything, the court cannot

continue to accord counsel repeated "second chances." This is especially so, when, in the cases mentioned above, the inconvenience and expense to other interested parties have been great[15] and the consequences to his own clients have been disastrous.[16]

Applicant counsel has also failed, in several notable instances, to make timely and sufficient filings of proposed plans of reorganization and other documents required for the processing of cases, with unfavorable consequences for his clients. His failure timely to file a proposed plan of reorganization in *Matter of Kennedy,* In proceedings for reorganization under chapter 11 of the Bankruptcy Code No. 85–02324–SW–11 (Bkrtcy.W.D.Mo.), resulted in dismissal of that case.[17] Similarly, in *Matter of*

"By means of a written order of April 7, 1986, this court set a hearing for April 18, 1986, at 4:00 p.m., in Joplin, Missouri, on 'any remaining issue of adequate protection' with respect to the creditor Opal Gallagher. Earlier in the course of the day of April 18, 1986, this court held a brief and informal conference with counsel for the debtors to request that stated firm improve its record of nonappearances for hearings set by the court. At that time, counsel stated nothing respecting his forthcoming nonappearance for the 4:00 p.m. hearing, but rather only pledged to improve an existing unenviable record of nonappearances. Later in the afternoon, between hearings, Charles Curless, Esquire, approached the bench to say that there was 'nothing to be heard' at 4:00 p.m., implying thereby that the matters for hearing had been worked out and settled. But, at 4:00 p.m., Mr. and Mrs. Brubaker appeared before the court. Neither Mr. Curless nor counsel for the debtors appeared at this time. It was necessary for the court to initiate a long distance telephone call to counsel for the debtor so that he might apprise the debtors of whatever had been worked out and settled. While it may have been satisfactory to obviate the necessity for a hearing by earlier stating on the record the terms and provisions of a final agreed settlement of the matter set for hearing, this was certainly not an acceptable procedure when counsel's clients were on the way to the hearing and had not been advised that there was no necessity for attending."

**14.** In that order, filed on November 18, 1986, the court stated as follows:

"Because counsel for the debtors did not appear for the hearing of November 6, 1986, his clients—the debtors—requested time in which to obtain other counsel. It is therefore

"ORDERED that debtors have to and including November 21, 1986, in which to notify the court in writing of the retention of successor counsel. It is further

"ORDERED that Douglas L. Winchester, within 15 days of the date of entry of this order, return the $1800 retainer and any other fees received to the debtors or else show cause in writing within the same 15 days why he should not be required to do so."

**15.** In the hearings not attended by counsel, other counsel have appeared, sometimes after travelling considerable distances, and other potential witnesses have been present in considerable numbers.

**16.** The court has accordingly directed the restoration of attorney's fees to Mr. Winchester's clients in the cases which have been dismissed.

**17.** See the court's order of March 4, 1986, denying the motion to reconsider the February 5, 1986, order of dismissal to the following effect:

"This court formerly, on February 5, 1986, issued its order dismissing the within chapter 11 proceedings, reciting in its written order of that date that it had previously, on January 2, 1986, issued an order directing the debtors to show cause in writing within 21 days why these proceedings should not be dismissed for failure timely to propose a plan and disclosure statement and that there had been no response to that order.

"The debtors now move to vacate and set aside that order, pointing out that it is based on a material factual mistake; that, in fact, the debtors had, on January 24, 1986, filed a response to the show cause order stating that they had not filed a plan and disclosure statement because there existed a possibility that the debtors may wish voluntarily to dismiss

*Williams,* In proceedings for reorganization under chapter 11 of the Bankruptcy Code No. 86–00395–3–11 (Bkrtcy.W.D.Mo.), his failure timely to file a proposed order of confirmation which, by its terms, would amend the debtors' plan as the court deemed necessary for confirmation, resulted in the nonconfirmation of the proposed plan in that case and significant and unnecessary protraction of the pre-confirmation period, to the great disadvantage of the creditors.[18] In *Matter of Carpenter,* In proceedings for reorganization under chapter 11 of the Bankruptcy Code No. 86–05014–SW–11 (Bkrtcy.W.D.Mo.), and *Matter of Lowe,* In proceedings for reorganization under chapter 11 of the Bankruptcy Code No. 86–00303–SJ–11 (Bkrtcy.W.D.Mo.), counsel brought about the dismissal of each chapter 11 proceeding through failure to file proposed plans of reorganization and disclosure statements in accordance with clear orders of the court. And, in *Matter of Billick,* In proceedings for reorganization under chapter 11 of the Bankruptcy Code No. 85–02099–SW–11 (Bkrtcy.W.D.Mo.), applicant counsel joined in an effort to transfer property of the estate to a friend of the debtor for a consideration admittedly much less than its value.[19]

This court believes that these derelictions of duty not only permit an inference that applicant should not be appointed as counsel in these chapter 12 proceedings but in fact compel the court to conclude that applicant counsel's appointment in this case would not, in view of past experience, aid in its administration. The court recognizes that the issuance of this order will likely

the chapter 11 proceedings if they obtain a patent on a certain creation or invention, which would enable them to pay their debtors in full.

"The response to the former show cause order of the court cannot be regarded as sufficient. It was untimely. Further, it is impermissible for a chapter 11 debtor to choose the time in which it will file a plan and disclosure statement in derogation of a court order which requires it to be filed within a time certain. Section 1112(b)(4) of the Bankruptcy Code clearly grants the bankruptcy court power to fix the time within which a proposed plan must be filed and to dismiss the chapter 13 case for failure to obey the court's order in this regard. Nor does the fact that the debtors may soon have the promise of sudden enrichment state a reasonable excuse not to file the proposed plan and disclosure statement. Our district court has held it to be an abuse of the arrangement or reorganization process for the debtors to utilize it solely as a conduit by means of which to wrest newly-gained monies from creditors. *Matter of Wallace,* 57 B.R. 364 (W.D.Mo.1985). And it is an abuse of the chapter 11 process to file a chapter 11 case with no intention to file a plan of reorganization—or to file one, if at all, only if necessary to hold creditors at bay—but only to gain the protection of the automatic stay in order to thwart the claims of creditors. *Matter of R & M Porter Farms, Inc.,* 38 B.R. 88, 91 (Bkrtcy.W.D.Mo.1984). The debtors do not combine their attack on the court's order of dismissal with a present offer to file any plan or disclosure statement within a reasonable time. And although granted a reasonable and explicit opportunity in which to do so, none of the creditors has objected to the dismissal of these proceedings."

18. In the confirmation hearing held on July 18, 1987, the court directed that the plan be confirmed, if amended to contain certain provisions, as follows:

"(1) that the discharge of the debtors be withheld until all creditors have been paid 100%;

"(2) that monthly reports continue to be filed until the plan is consummated and copies thereof are timely to be served upon the Union State Bank;

"(3) that the property to be returned to secured creditors for current value would be subject to the rule of *In re Fursman Ranch,* 38 B.R. 907 (Bkrtcy.W.D.Mo.1984), and consequent reduction of the credit given against balance due to the amount for which the creditor later sells the property in a commercially reasonable manner;

"(4) the bankruptcy court should retain jurisdiction for all purposes until full consummation of the plan;

"(5) the effective date of the plan would be July 18, 1986; and

"(6) debtors' counsel was to submit an order of confirmation embodying these conditions within 14 days of July 18, 1986."

To ensure that the debtors assented to the conditions which the court held as a matter of law were necessary to confirmation, the court directed that counsel for the debtor submit a proposed order of confirmation containing the conditions within 14 days. Counsel did not design to submit the proposed order until nearly two months later, in August 1986, and then added conditions which contradicted the court's position that none of the debts be discharged on confirmation.

19. See *Matter of Billick,* 67 B.R. 670, 671, n. 3 (Bkrtcy.W.D.Mo.1986).

draw a volley of baseless calumny and vilification, as its orders have frequently drawn from applicant counsel in the past.[20] Nevertheless, for the reasons stated above, this court has no alternative except to issue it. The demands of case processing and of protection of the procedural rights of all interested parties require it. It is therefore

ORDERED that the application of Douglas L. Winchester, Esquire, for an appointment as debtors' counsel be, and it is hereby, denied. It is further, accordingly,

ORDERED that Douglas L. Winchester, Esquire, within 15 days of the date of the filing of this order return the retainer fee collected by him to debtors. It is further

ORDERED that the debtors advise the court in writing within 25 days of the date of filing of this order of the identity of successor counsel retained by them.

---

**20.** This has been so in the past. See, e.g., the order of February 21, 1986, in *Matter of Kleeman,* In proceedings for reorganization under chapter 11 of the Bankruptcy Code No. 85–00843–SW–11 (Bkrtcy.W.D.Mo.), to the following effect:

"The boundary line of the flagrant, moreover, has been transgressed by counsel for the debtors in the intemperate and insulting language addressed to the court in the motion at bar. This court elects to ignore the intended provocation in favor of rendering a decision in this matter which is at once expeditious and in accordance with the law. The chief focus of counsel's accusatory diatribe against the court in his telephone call to the court after the dismissal of the former chapter 11 case in which he informally asked the undersigned for relief from the order of dismissal. The undersigned advised counsel that it is improper and unlawful to seek relief through such an *ex parte* contact and that he should either file a motion for the relief sought or else—if he was intent on resolution by informal means—he should contact the moving creditor. Counsel is apparently so oblivious of the ethical standards which bind the court and counsel that he somehow believes his own misconduct to reflect badly on the court. But far from indicating any bias in favor of a creditor or against the debtors or their counsel, the court was only attempting to guide counsel in the direction of the permissible and away from the improprieties which he was committing."

And, in the resent past when counsel for the United States complained (in a letter which noted that a copy had been sent to the undersigned, a copy which in fact was not solicited by the undersigned) to Mr. Winchester that he had failed to serve copies of operating reports on government counsel, Mr. Winchester, in his letter of February 5, 1987, made baseless accusations of bias of the undersigned toward the United States. And, in *Matter of Billick,* In proceedings under chapter 11 of the Bankruptcy Code No. 85–02099–SW–11 (Bkrtcy.W.D.Mo.), Mr. Winchester, in open court, after the undersigned had retired to chambers on the date of February 20, 1986, in Joplin, Missouri, publically vilified the undersigned in the presence of many persons in the courtroom, including the undersigned's secretary.