**In the Matter of Johnnie Marion RUTHERFORD, Debtor.**

**Bankruptcy No. 84-02395-SW-7.**

United States Bankruptcy Court,
W.D. Missouri,
Southwestern Division.

Nov. 6, 1985.

Stephen B. Strayer, Charles Gottschall, Kansas City, Mo., for debtor.

Thomas Williams, Joplin, Mo., trustee.

## ORDER DIRECTING JEFFREY R. MARCUS, ESQUIRE, TO PAY THE SUM OF $2,500 PLUS INTEREST TO THE TRUSTEE IN BANKRUPTCY

DENNIS J. STEWART, Bankruptcy Judge.

This chapter 11 case was filed by the debtor on July 27, 1984. On that date, the debtor's then retained counsel, Jeffrey R. Marcus, Esquire, filed a simple petition without any accompanying statements of affairs or schedules. Despite the fact that this case appears to involve only four creditors, and that preparation of such statements of affairs and schedules should have been many times easier than in the average title 11 bankruptcy case, such statements of affairs and schedules were not filed until some 41 days later, on September 6, 1984. Although the court had, in an exercise of great liberality in favor of the debtor, in the meantime granted an extension of time to and including August 28, 1984, in which to file the statements of affairs and schedules, they were not filed even within that overly fair grant of additional time. And when filed, they proved to be as simple of content as the paucity of debts sought to be discharged would have indicated. The great majority of responses on the preprinted forms were simply negative answers.[1]

No monthly operating reports detailing the income and expenses of the debtor were filed with the court in compliance with local bankruptcy rule 8(F) until dismissal was threatened, and then compliance was only partial and no effort was made to file statements continually and on a timely basis.[2] No proposed plan and disclosure statement were timely filed. This culminated in the filing of a motion to dismiss by the principal creditor. Mr. Marcus then filed a pro forma disclosure statement and plan, documents which were simply copied from forms used in cases having no similarity to the case at bar. This was made painfully obvious by the fact that the proposed plan, a document having a total of 7 pages, spent 1½ of those pages describing the powers and duties of a creditors' committee when no creditors' committee had even been appointed in this case.

The court subsequently entered its order on March 8, 1985, setting a hearing on the sufficiency of the disclosure statement and on the creditors' motion to dismiss for April 2, 1985, in Joplin, Missouri. Mr. Marcus failed to comply with the clerk's instructions to distribute the notice for that hearing and then failed to appear for the hearing on April 2, 1985. He had, however, telephoned the office of the court on April 1, 1985, to indicate that he would be present for the hearing on April 2, 1985.

After Mr. Marcus had failed to appear for the hearing on the motion to dismiss, this court was unable to contact him by telephone, but did succeed in contacting his co-counsel, Charles Gottschall, who advised this court that he had also been unable to contact Mr. Marcus to advise him of Mr. Rutherford's dissatisfaction with his services. This led to a belief on the part of this court that Mr. Marcus no longer wished to serve in the capacity of counsel for the debtor. Consequently, on April 4, 1985, this court issued its order terminating Mr.

---

1. Whether these responses were correct and accurate, the court has no way of knowing. But it was apparent that very little time and effort was necessary to complete the petition and schedules.

2. The petition was filed on July 27, 1984. Only one monthly operating report was filed, it being filed on October 9, 1984, and representing to reflect the chapter 11 operations for the period from July 16, 1984, to August 16, 1984.

Marcus' appointment as counsel for the debtor. That order contained the following relevant considerations:

"In accordance with the request of counsel for the debtor, and in exercise of the discretionary power of the court under section 327 of the Bankruptcy Code, it is hereby

"ORDERED that the appointment of Jeffrey R. Marcus, Esquire, as counsel for the debtor be, and it is hereby, terminated. In order to ensure that counsel is paid such fees and expenses which are due him, it is further

"ORDERED that, pursuant to Rule 2017 of the Rules of Bankruptcy Procedure, terminated counsel submit to the court within 15 days of the date of entry of this order a detailed written statement of the legal services rendered by him for which he seeks compensation. In the event of timely compliance with this order, it will be possible for the court to make an order for the payment of a proper amount of fees according to the merits of the statement."

Mr. Marcus responded to that order by moving to vacate it and by filing a motion for disqualification of the undersigned which was clearly unmeritorious as a matter of form and substance. The court, in its order of April 11, 1985, denied the motion for disqualification and reinstated Mr. Marcus as counsel for the debtor on certain conditions, including his justifying the fees which he had charged the debtor,. his explaining his absence from the April 2, 1985, hearing, and his explaining the circumstances of prior terminations of his appointment in another division of the bankruptcy court. The following considerations were stated in the court's order of April 11, 1985:

"On April 4, 1985, this court issued its order, *inter alia*, terminating the appointment of Jeffrey R. Marcus, Esquire, as counsel for the debtor, reciting that it was '[i]n accordance with the request of counsel for the debtor, and in exercise of the discretionary power of the court under section 327 of the Bankruptcy Code.' By means of his motion filed on April 11, 1985, counsel for the debtor requests reconsideration of this order and contends that there is no basis for termination of his appointment.

"Because the termination may have been based on a misunderstanding by the court as to the intention of Mr. Marcus with respect to this case, the court will reinstate Mr. Marcus as counsel for the debtor. The court's possible misunderstanding derived from the fact, as shown by the files and records in this case, that this court issued its order of March 8, 1985, setting a hearing on the motion of Una Marie Winans and Twila D. Jeffcoat to dismiss these chapter 11 proceedings for April 2, 1985, in Joplin, Missouri. The same order set a hearing on the sufficiency of the debtor's proposed disclosure statement for the same date and the same time, 2 p.m. The files and records in this case further show that, on March 8, 1985, deputy clerk Charleen Greer transmitted a copy of that order to Mr. Marcus, stating as follows:

" 'Enclosed is a copy of the order of 3/8/85, setting hearing on the sufficiency of the disclosure statement and directing the filing of objections to the sufficiency of the disclosure statement. It is your responsibility to send this order along with a copy of the disclosure statement to all creditors. Thank you for your cooperation in this matter.

'I have enclosed a copy of the mailing matrix for your convenience.'

"On April 1, 1985, the secretary to the undersigned reported to the undersigned that Mr. Marcus had telephoned respecting the hearing set for the next day, April 2, 1985, and stated his intention to be there for the hearing. At the time and date appointed for the hearing, however, April 2, 1985, there were no appearances for the hearing. The undersigned then attempted to telephone Mr. Marcus at his Kansas City office and was informed by a secretary that Mr. Marcus was 'out of the office.' The secretary for the undersigned then attempted to telephone counsel for the movants to in-

quire as to why he had not appeared for the hearing and he responded to the effect that he had received no notice of the hearing.

"On the following day, April 3, 1985, the undersigned succeeded in contacting co-counsel for the debtor, Charles Gottschal, Esquire, who advised the undersigned, in part, that he believed that everything had been taken care of; that Mr. Marcus had advised him that a Joplin counsel had been retained who would take care of further proceedings; and that he had had difficulty in contacting Mr. Marcus and that, if Mr. Marcus was not going to represent Mr. Rutherford further, he would request that some $2,500 in attorney's fees be returned to Mr. Rutherford. The court understood from this conversation, and in the absence of an ability to contact Mr. Marcus by telephone or otherwise, that Mr. Marcus's defaults could be explained by his withdrawal as counsel for the debtor. Mr. Gottschal's statements to the undersigned on April 3, 1985, seemed to dovetail with a pleading which he had previously filed with this court in this case on February 25, 1985, to the following pertinent effect:

" 'Attorney Gottschall learned of the pending application to dismiss during the past week. Several calls to Attorney Marcus have not been returned. Only today was counsel able to contact the Debtor, who advises that he has not heard from Mr. Marcus for several weeks.

" 'Attorney Gottschall, as well as Debtor herein, request the court [to] grant him an additional ten (10) days to show cause why the case should not be dismissed. Further, Debtor has expressed to Attorney Gottschall his desire to retain a new Attorney for the purpose of handling this Bankruptcy matter. This request is therefore made not for the purpose of further delay, but to secure new counsel to represent Mr. Rutherford in this matter.'

"Accordingly, this court interpreted the combination of circumstances to mean that Mr. Marcus was voluntarily withdrawing from the case. The motion now before the court represents the contrary and further states that 'Debtor, in the exercise of his Sixth Amendment Right to Counsel of his Choice, desires to retain Jeffrey R. Marcus as his counsel.' Therefore, because the court may have misunderstood the hitherto unexplained failure of Mr. Marcus to attend the hearing of April 2, 1985, or to send out the notices therefor, and because Mr. Marcus may not have intended to communicate to the court his voluntary withdrawal, he will be reinstated as counsel for the debtor. He may explain in writing, if he wishes, his failure to attend the hearing of April 2, 1985, and his failure to send out the notices therefor in his detailed statement of legal services rendered which he should be filing in response to the order of April 4, 1985.

"The debtor moves to disqualify the undersigned, pursuant to section 455, Title 28, United States Code, on the grounds that he:

'has a personal bias or prejudice against counsel for the Debtor as indicated by the facts in this proceeding and pursuant to 28 U.S.C. section 455 "his impartiality might reasonably be questioned," and therefore he should disqualify himself from these proceedings.'

"The statement of facts underlying a motion or request for disqualification are required to be in affidavit form. But, even if the facts asserted by the debtor are true, they do not constitute a sufficient ground for disqualification of the undersigned. It is ordinarily held that animosity toward counsel (an animosity which the undersigned does not bear) is not a sufficient ground for disqualification of the judge. When parties have sought disqualification on the theory that animosity of the judge toward their counsel is imputed to them, the courts have not generally granted recusation. See, e.g., *Davis v. Board of School Com'rs of*

*Mobile County,* 517 F.2d 1044, 1050 (5th Cir.1975), *reh. denied,* 521 F.2d 814 (5th Cir.1975), *cert. denied,* 425 U.S. 944 [96 S.Ct. 1685, 48 L.Ed.2d 188] (1976). It was there noted that:

" 'No bias or prejudice personal to Foster and Buskey is set out. They seek disqualification on an imputation theory—the bias against their lawyer is imputed to them. Read broadly, this peremptory challenge type approach would bid fair to decimate the bench. Lawyers, once in controversy with a judge, would have a license under which the judge would serve at their will.'

"Ordinarily, '[a]ntipathy to an attorney is insufficient grounds for disqualification under section 144, because it is not indicative of extrajudicial bias against a "party." ' *United States v. International Business Machines,* 475 F.Supp. 1372 (S.D.N.Y.1979). And the facts alleged by the debtor, which are simply to the effect that the order terminating Mr. Marcus as counsel [was entered], are not sufficient to describe a case in which antipathy to counsel 'has crystallized to a point where the attorney can do no right ... in a matter where the attorney's private interests are at stake.' *Rosen v. Sugarman,* 357 F.2d 794, 798 (2nd Cir.1966). Further, the prior ruling of this court is an insufficient basis for disqualification. 'Repeated rulings against a litigant, no matter how erroneous and how vigorously and consistently expressed, are not a basis for disqualification of a judge on the grounds of bias and prejudice.' *Maret v. United States,* 332 F.Supp. 324, 326 (E.D.Mo.1971). 'In particular, past adverse rulings and a litigant's fear of future adverse rulings remain insufficient to oust a judge from a case ... Otherwise, amended section 455(a) might launch dissatisfied litigants throughout the country on unlimited judge-shopping sprees.' *United States v. International Business Machines, supra,* at 1389. The court has admitted that its prior ruling may have been based on a misunderstanding of the intention of counsel for the debtor and has taken steps to grant the counsel a reasonable opportunity for explanation of his failure to appear on April 2, 1985, and his failure to transmit and distribute the order in accordance with the clerk's instructions. Nothing extreme, biased, or prejudicial has been or can be alleged."

By April 25, 1985, however, Mr. Marcus had not complied with the court's order to justify his attorney's fee. This court therefore, on its own motion, granted Mr. Marcus an extension of time in which to do so by means of its order of that date. In the meantime, at debtor's request, Stephen B. Strayer had, on April 25, 1985, applied for appointment as counsel for the debtor. Consequently, in submitting his application for an award of attorney's fees, Mr. Marcus filed additional papers filled with persiflage and invective directed at the court, falsely alleging that if the court had not entered its orders of April 4 and April 11, 1985, his former client would not have become dissatisfied with his services and retained other counsel. These allegations were well known by Mr. Marcus to be false, inasmuch as his co-counsel had, as early as February 25, 1985, stated that the debtor was desirous of discharging Mr. Marcus as his counsel.[3] But Mr. Marcus went further still in his response to the court, again inappropriately raising the issue of disqualification of the undersigned by presenting an affidavit which he had solicited from the debtor that the undersigned bore a personal prejudice against Mr. Marcus. The reassertion of a motion in such conclusionary terms constituted the filing of impertinent, redundant pleadings lodged only for the purpose of insulting the court.[4] And the advising of a client to sign an affidavit respecting matters of which he

---

3. See page of the text of this memorandum, *supra.*

4. Matters "unnecessarily pleaded [or] paragraphs seeking to retry a previous action ... may be stricken." 2A Moore's Federal Practice ¶ 12.21, pp. 2424, 2425 (1985).

could have no personal knowledge was a breach of an attorney's ethical duty to work for the benefit, not the detriment, of his client.[5]

The statement which Mr. Marcus filed in support of his attorney's fees, however, was devoid of any content which would support an award of any attorney's fees in any magnitude. Mr. Marcus' own statements demonstrated that, after he took the $2,500 retainer from the debtor, he only filed the petition and schedules which, because of the existence of fewer than five creditors, was very simple and to say the least, unchallenging and, in which he admittedly nevertheless made a critical error

in identifying at least one of the creditors.[6] After that, as noted above, he repeatedly failed and refused to attend to the filing of the monthly operating reports, as observed above, and filed only a pro forma plan and disclosure statement, documents which, as noted above, were simply copied from forms and not adapted to this case in virtually any detail. Thus, aside from the simple petition and schedules, Mr. Marcus' case for attorney's fees could be based only on his filing of several motions for extensions of time which were primarily made necessary only by his own dilatory conduct[7] and the attempt to disqualify the undersigned which only evidenced Mr. Mar-

5. "The professional judgment of a lawyer should be exercised, within the bounds of the law, solely for the benefit of his client and free of compromising influences and loyalties. Neither his personal interests, the interests of other clients, nor the desires of third persons should be permitted to dilute his loyalty of his client." Mo.Rule 4, Canon 5, EC 5–1.

6. The creditors who moved for dismissal were Una Marie Winans and Twila Jeffcoat. They

were not identified by their names on the schedules which were prepared by Mr. Marcus. At one point in the history of this case, Mr. Marcus telephoned the court to advise it of his intention to correct the record in this particular, but his expressed intention in this regard was never carried out.

7. The detailed statement submitted by Mr. Marcus in support of his application for fees contained the following entries.

| "ATTORNEY | EXPENSE | AMOUNT | TIME | MO/DA/YR | DESCRIPTION OF SERVICES |
|---|---|---|---|---|---|
| JRM | | | .25 | 08/01/84 | Teleconf. c. Bottschall. |
| JRM | | | 3.25 | 08/02/84 | Prep schedules & review Material. |
| JRM | | | 1.25 | 08/03/84 | Motion to Amend Requirements of local rules. |
| JRM | | | 3.25 | 08/06/84 | Schedules—Property; oil situation. |
| JRM | | | 1.25 | 08/07/84 | Receipt of Worksheets & review. |
| JRM | | | 2.00 | 08/13/84 | Review info provided by client. |
| JRM' | | | 2.75 | 08/16/84 | Schedules and motions. |
| JRM | | | 1.75 | 08/17/84 | New info on schedules—Prepared schedules. |
| JRM | | | .50 | 08/21/84 | Mtg. w/ C Bottschal re documents. |
| JRM | | | 1.75 | 08/21/84 | Prep—Schedules B 1–4. |
| JRM | | | .50 | 08/27/84 | Prepare motion for * extension of time. |
| JRM | | | .50 | 08/28/84 | Teleconf. w/ C. Bottschal & * Motion Ext. of Time. |
| JRM | | | 1.00 | 08/31/84 | Prep schedules. |
| SUBTOTALS | | | 20.00 | | |
| JRM | | | 1.00 | 09/06/84 | Changes in applications & * files. |
| SUBTOTALS | | | 21.00 | | |
| | Word Proc | 2.50 | | 10/01/84 | Mot for Con't. * |
| JRM | | | .25 | 10/03/84 | Ltr. to client dictated re: Farm reports. |
| JRM | | | 1.50 | 10/09/84 | Operating Stments, Farming Stments. |
| JRM | Copies | 3.30 | .50 | 10/09/84 | Corresp. to client re: Operating Stments. |
| SUBTOTALS | | 5.80 | 23.25 | | |
| JRM | Copies | .15 | 2.25 | 11/02/84 | Analyze operating statemt & Prep for draftng plan. |
| SUBTOTALS | | 5.95 | 25.50 | | |
| JRM | Word Proc | 5.00 | .50 | 12/05/84 | Mtn for Ext of Time to * file Plan. |
| | Copies | 1.94 | | 12/14/84 | |
| | Word Proc | 5.00 | | 12/14/84 | Mtn. & Order for Con't & * change of Location. |
| JRM | Word Proc | 7.50 | .75 | 12/27/84 | Motions for Extension of * Time. |
| SUBTOTALS | | 25.39 | 26.75 | | |
| | Copies | 2.70 | | 01/03/85 | Photocopy expense. |

cus' profound ignorance of and disregard for the applicable law.[8]

Finally, on or about May 8, 1985, Mr. Marcus compounded all of his prior misconduct by sending a letter to the undersigned which proposed an illegal, *ex parte, sub rosa* conference on the issues which had been raised by his misconduct and maladministration.[9]

On the basis of these facts, this court has no choice except to exercise the power granted it under Rule 2017 of the Rules of Bankruptcy Procedure to mulct Mr. Marcus of his attorneys fees on the dual and independent grounds of (1) misconduct and (2) the failure of his services to confer any benefit on the ·debtor. Misconduct alone warrants the forfeiture of the $2,500 fee. "Improper conduct on the part of an ... attorney has frequently been penalized by withholding compensation or reimbursement or both. Not only the statute and the

| "ATTORNEY | EXPENSE | AMOUNT | TIME | MO/DA/Yr | DESCRIPTION OF SERVICES |
|---|---|---|---|---|---|
| JRM | | | 1.25 | 01/11/85 | Analyze schedules & fiscal info re Plan. |
| JRM | | | 1.75 | 01/23/85 | Plan and Disclosure. |
| SUBTOTALS | | 28.09 | 29.75 | | |
| | LD Call | 4.39 | | 01/23/85 | Call to Joplin, Mo. * |
| JRM | | | .25 | 02/12/85 | Call to Client. |
| | Word Proc | 2.50 | | 02/25/85 | Mtn for Extension of Time * . |
| JRM | | | 2.75 | 02/27/85 | Prep Plan & Disclosure; teleconf w/client & atty Edwards. |
| JRM | | | 1.00 | 02/28/85 | Ltr from Gottschal; revw file—reply. |
| SUBTOTALS | | 34.98 | 33.75 | | |
| JRM | | | .25 | 03/01/85 | Conf w/C Gottschal re: Plan & Disclosure. |
| WJD | | | 1.00 | 03/01/85 | Review file and correspondence & response to same. |
| | Word Proc | 5.00 | | 03/04/85 | Draft Plan of Reorganization |
| | LD Call | .57 | | | Call to client. |
| | Word Proc | 17.50 | | 03/05/85 | Disclosure Stment; Mtn. to Show Cause; rev to Plan. |
| | Copies | 18.00 | | | |
| JRM | LD Call | 1.65 | | | Call to client. |
| | Copies | 1.80 | | 03/13/85 | |
| SUBTOTALS | | 79.50 | 35.00 | | |
| JRM | | | 1.25 | 04/01/85 | Review Plan and Disclosure. |
| JRM | | | 1.00 | 04/10/85 | Prep Mtn for Disqualify—New Trial. |
| WJD | | | .50 | 04/10/85 | Review Pleading and Order. |
| JRM | Word Proc | 12.50 | 1.00 | 04/11/85 | Revise Mtn to Disqualify—New Trial. |
| | Copies | 1.20 | | | |
| JRM | | | 1.75 | 04/19/85 | Rev Plan filed re: Abatement; of payment and changes in Disclosure Stment re: abatement. |
| JRM | | | 1.50 | 04/23/85 | Conf w/clients & C. Gottschol |
| JRM | | | .25 | 05/01/85 | Teleconf w/Steve Strayer re: status. |
| TOTALS | | 93.20 | 42.25" | | |

Thus, of the total of 42.25 hours for which compensation is sought, fully 3.25 hours were spent in filing applications for extensions of time and motions for continuances. Two and one half hours were spent in filing motions and affidavits for disqualification. Of the remaining 36.50 hours for which compensation is sought, virtually all the time reported is exaggerated and "padded." The simple petition and schedules could not have required more than an hour's time in preparation; and the same is true of the purely boilerplate proposed plan and disclosure statement.

**8.** See note 7, *supra.*

**9.** Mr. Marcus' letter of that date read as follows:
"There have been some recent issues arise in the handling of cases we have filed on behalf of debtors in your division. Bill Davis and I would appreciate the opportunity to discuss the same with you. We would appreciate it if someone on your staff would call to schedule a meeting at the time and place convenient to you. Thank you."

Rules provide for this type of penalty, but courts have repeatedly used it as the most effective weapon against malpractice...." 3A Collier on Bankruptcy ¶ 62.05[5], p. 1431 (14th ed. 1979). The above facts demonstrate a rather complete catalogue of deliberate misconduct by Mr. Marcus—his refusal to file proper documents or to obey the orders of the court even after being given repeated opportunities to do so; [10] his raising the disqualification issue in a manner which demonstrated that its purpose was not actually to effect disqualification but rather to insult the court unnecessarily and gratuitously; [11] his deliberate, calculated and unexplained refusal to attend the hearing on April 2, 1985 [12]; his issuing an invitation to the court to commit an impropriety; and his repeated and obviously deliberate refusal to perform the duties of counsel for the debtor in a chapter 11 case. It is not a misdescription of Mr. Marcus' conduct in this case to say that he took the $2,500 retainer, then refused to do anything to earn it, and when the court sought to prompt Mr. Marcus to carry out his duties as counsel, Mr. Marcus responded with invective and contumacious conduct, so committed was he to a programme of not performing the lawyerly functions which were necessary to earn his retainer.

The record before the court demonstrates this with such clarity that, even without the deliberate misconduct, he still could not be deemed to have earned any of his $2,500 fee. The error in the initial petition and schedules, and the subsequent failure of Mr. Marcus to prosecute this chapter 11 case, fully negated any benefit which their filing may otherwise have conferred on the debtor. Otherwise, as observed above, Mr. Marcus' efforts were directed solely to preserving his fee and no effort at all was made to advance the debtor's interests.[13]

It is therefore, for the foregoing separate and independent reasons, hereby

ORDERED that Jeffrey R. Marcus, Esquire, turn over to the trustee in bankruptcy, Thomas Williams, Esquire, the sum of $2,500 within 30 days of the date of entry of this order or within such additional time as the court may grant for good cause shown in writing within the same 30 days.

---

**10.** Mr. Marcus failed to respond to the order of April 11, 1985; refused without explanation to attend the hearing of April 2, 1985; refused to comply with the court's orders to file regular monthly operating reports; and refused to file anything approaching an appropriate plan and disclosure statement.

**11.** It is not contumacious, of course, to file a motion to disqualify a judge. But the manner of the filing of the motions in this case demonstrates a lack of knowledge of the appropriate procedural and substantive law applying to motions to disqualify. Further, the issue was raised inappropriately after it had once been adjudicated.

**12.** It must be observed in this regard that, in issuing its orders of April 4, 1985, and April 11, 1985, which are quoted in the text of this memorandum, this court granted Mr. Marcus an ample and explicit opportunity to explain his absence from the hearing of April 2, 1985. But Mr. Marcus failed and refused to avail himself of this opportunity.

**13.** Cf. note 7, *supra*.