**In the Matter of Ernest N. WESTFALL, Debtor.**

**Bankruptcy No. FS 84–316M.**

United States Bankruptcy Court,
W.D. Arkansas,
Fort Smith Division,

Nov. 10, 1986.

Robert J. Brown, Little Rock, Ark., for debtor.

Jill Jacoway, Fayetteville, Ark., Trustee.

ORDER APPROVING SETTLEMENT OF ISSUE OF ATTORNEYS' FEES AMONG APPLICANT COUNSEL, *INTER PARTES,* WHEREBY JILL R. JACOWAY, ESQUIRE, IS TO BE AWARDED $7,500.00 IN ATTORNEY'S FEES; R.J. BROWN, ESQUIRE, TO BE AWARDED THE SUM OF $12,500; AND DAVID SMITH TO BE AWARDED THE SUM OF $17,500, PROVIDED THAT NO CREDITOR OBJECTS IN WRITING WITHIN 25 DAYS OF THE DATE OF SERVICE OF THIS ORDER UPON THEM AND DIRECTING DEBTOR'S COUNSEL TO SERVE COPIES OF THIS ORDER UPON ALL AFFECTED CREDITORS

DENNIS J. STEWART, Chief Judge.

Pending before the court are the applications for attorneys' fees of Jill R. Jacoway, Esquire, as attorney for the trustee in bankruptcy; R.J. Brown, Esquire, attorney for the debtor, and David Smith, Esquire, former attorney for the debtor. By former order of this court, these matters were consolidated with the issues of (1) the merits of *Westfall v. Jacoway,* Adversary Proceeding No. AP 86–299 and (2) the pending motion of the debtor, filed May 23, 1986, to dismiss the within chapter 11 proceedings, for joint hearing in Fort Smith, Arkansas, on October 15, 1986.

Before the hearing of October 15, 1986, could be convened, the attorney for the debtor informally advised the court that all matters set for hearing on October 15, 1986, had been fully compromised and settled. Accordingly, on or about September 24, 1986, counsel for the debtor purported to dispatch the following notice to all creditors:

"NOTICE OF SETTLEMENT OF ATTORNEYS FEES AND PROPOSED DISMISSAL OF CHAPTER 11 CASE

"Take notice that the debtor has settled the administrative expenses for attorneys fees and costs advanced in accord with the settlement agreement annexed to and made a part of this notice.

"Further take notice that the debtor is submitting a proposed precedent for dismissal of the Chapter 11 case, approval of the settlement of the payment of attorneys fees and expenses, and to remand all pending removed state court actions back to the court from whence they came in accord with the annexed which is enclosed and made a part of this notice.

"Further take notice that any person objecting to the settlement or to the entry of the order of dismissal of the chapter 11 case shall file any such objections with the Bankruptcy Clerk on or before October 8, 1986, and provide a copy to undersigned counsel as follows:

U.S. Bankruptcy Clerk
U.S. Post Office and Courthouse
Little Rock AR 72201

R.J. Brown, P.A.

P.O. Box 3773

Little Rock, AR 72203

"If no objections are filed, the debtor anticipates that the court will approve the settlement and the entry of the order of the dismissal of the Chapter 11 case along the lines proposed without further notice or further opportunity to be heard.

"If objections are filed in a timely manner by October 8, 1986, those objections will come on for hearing before the Bankruptcy Judge commencing at 10:00 o'clock a.m. on October 15, 1986, at the U.S. Post Office and Courthouse Building in Fort Smith, Arkansas.

ERNEST N. WESTFALL

R.J. BROWN, P.A.

Attorneys at Law

P.O. Box 3773

Little Rock, Arkansas 72203

(501) 378–7877

By s/Robert J. Brown

Robert J. Brown

Attorneys for Debtor in Possession

cc: attorneys, creditors list and parties in interest"

Attached to that "notice" is a copy of a letter from Mr. Brown to Charles W. Baker, Esquire, Rose Law Firm, 120 E. 4th Street, Little Rock, Arkansas 72201, in respect of the "Settlement of attorneys fees and dismissal of Chapter 11 case of Ernest Westfall." That letter reads as follows:

"Dear Judge Baker:

"By this letter I confirm the settlement of the remaining administrative expenses of attorneys fees and costs advanced by the debtor with each of the attorneys as follows:

| | | |
|---|---|---|
| Jill R. Jacoway | $7,500.00 | |
| David E. Smith | 35,000.00 | fees |
| | 4,036.19 | expenses advanced |
| R.J. Brown, P.A. | 25,000.00 | balance of fees owed |
| | 2,902.68 | expenses advanced |
| | $74,438.87 | |

"Jill R. Jacoway will be paid $7,500.00 within thirty days after entry of the decree or order dismissing the Chapter 11 case. The debtor has an application for dismissal pending and by separate correspondence is requesting the Judge to enter that order if no objections are promptly made. David E. Smith will be paid $17,500.00 and R.J. Brown, P.A., will be paid $12,500.00 within thirty days after entry of the decree or order of dismissal. The balance of the fees and expenses owed to David E. Smith and to R.J. Brown, P.A., shall be a general unsecured indebtedness of the debtor, Ernest Westfall personally and shall be paid in full upon the sale of the real property owned by the Debtor in Sebastian County, Arkansas, located at 320 South 18th Street, or within 1 year after the date of entry of the decree or order dismissing this case, whichever event sooner occurs.

"By copy of this letter I am apprising all other counsel in the case of our settlement of the fee disputes and of our proposed dismissal of the case. A copy of the order of dismissal either accompanies this letter or will be forthcoming shortly thereafter by separate correspondence. With regard to unresolved removed matters from State Court, the effect of the order of dismissal will be an immediate jurisdictional remand to the appropriate local court.

"Very truly yours,

R.J. BROWN, P.A.

By s/Robert J. Brown

Robert J. Brown"

The following proposed "decree of dismissal of chapter 11 case" was also attached to the "notice":

"DECREE OF DISMISSAL OF
CHAPTER 11 CASE

"Upon Motion to Dismiss Chapter 11 Case filed May 23, 1986, by the debtor, notice and an opportunity to be heard having been provided to the debtor, all creditors, and parties in interest, and upon applications for attorneys fees and reimbursement of administrative expenses now pending before the court and the proposed settlement of those requests, it appears and the court finds:

1. All orders in the Chapter 11 case, all orders in contested matters and adversary proceedings and appeals pertaining thereto entered during the pendency of

the Chapter 11 case should remain in full force and effect as final orders.

2. By settlement agreement and approval of the court, the remaining administrative expenses of this Chapter 11 case consisting of professional fees and costs advanced are settled and allowed as follows, to-wit:

| | | |
|---|---|---|
| Jill R. Jacoway | $7,500.00 | |
| David E. Smith, ½ fees | 35,000.00 | fees |
| | 4,036.19 | expenses advanced |
| R. J. Brown, P.A. ½ fees | 25,000.00 | balance of fees owed |
| | 2,902.68 | expenses advanced |
| Total | $74,438.87 | |

"The Court finds that the debtor has made provision for payment of these fees by borrowing funds to be secured by real property which the debtor owns in Sebastian County, Arkansas. The debtor will pay Ms. Jacoway $7,500.00, David E. Smith $17,500.00 and R.J. Brown, P.A., $12,500.00 within thirty days after the entry of the order of dismissal in this case. The remaining balance of fees and expenses advanced which are owed to David E. Smith and R.J. Brown, P.A., will be paid by the debtor from the proceeds from the sale of real property owned by the debtor in Sebastian County, Arkansas, or within one year after the entry of this order, whichever sooner occurs, and shall bear interest at 10% simple interest per annum from the date of the entry of this order until paid.

3. This court's jurisdiction with regard to cases removed from the Courts of the State of Arkansas to the Bankruptcy Court, those cases now being remanded, is terminated and the jurisdiction of the State Court with regard to those proceedings is reestablished upon entry of this order of record. All orders of this court entered during the course of the administration of any such removed case while the Chapter 11 case was pending in this court remain in full force and effect.

4. It is in the best interests of the estate, the debtor and the creditors to dismiss this Chapter 11 case to effectuate a substantial savings in litigation and administrative expenses which would otherwise be incurred if it were to remain pending and to further serve the ends of the fair efficient and effective administration of justice."

On October 15, 1986, subsequently, the court convened the hearing which had been scheduled. Ms. Jacoway appeared personally and without counsel; the debtor Ernest Westfall appeared personally and by counsel, R.J. Brown, Esquire; and David Smith, Esquire, appeared personally. At the outset of the hearing, those present stated their desire to enter into the compromise and settlement which had previously been adverted to by Mr. Brown. In outline, the principal provisions of the proposed settlement were that (1) *Westfall v. Jacoway*, Adversary Action No. 86–299, was to be dismissed without prejudice or with prejudice; (2) applicant counsel were to receive attorney's fees from the chapter 11 estate in the following sums: Ms. Jacoway, $7,500; Mr. Brown, $12,500; and Mr. Smith, $17,500; and (3) a third adversary proceeding, number 86–591, was to be remanded to the state court from which it had formerly been removed.

■ It is incumbent upon a bankruptcy court independently to determine the reasonable amount of attorney's fees to be awarded from a bankruptcy estate, even if no creditor objects.[1] Further, it is necessary, in order to make that determination,

1. It is the court upon which the duty is imposed to scrutinize "arrangements between a debtor and his attorney to protect the creditors of the estate and the debtor against overreaching by an officer of the court who is in a peculiarly advantageous position to impose on both the creditors and the client." Advisory Committee Note to Rule 2017 of the Rules of Bankruptcy Procedure.

that the court discover, on its own motion, if necessary, whether an attorney acting for the bankruptcy estate has any conflict of interest.[2] In his complaint in Adversary Action No. 86–299, plaintiff made allegations that the appointment of Ms. Jacoway as trustee and as counsel for the trustee by Judge James G. Mixon of this court was improper because of her serving as successor trustee to Judge Mixon in several bankruptcy cases as to which Judge Mixon's trusteeship had been terminated when he was appointed as bankruptcy judge. It is asserted in that complaint that the successor trusteeship imports a prohibited relationship between the appointing judge and the appointed trustee in that the position of Judge Mixon as former trustee and Ms. Jacoway as successor trustee (in cases which are not alleged in any way to relate to this one) resulted in their having "*ex parte* conferences" with respect to those cases. And, as material, it is further stated that Ms. Jacoway attempted actively to conceal this "relationship" from the debtor and his counsel in this case.

Therefore, at the inception of the hearing convened by the court on October 15, 1986, the court inquired into the factual merit of the allegations thus made by the debtor in Adversary Proceeding No. AP 86–299. It was necessary to do so even though the debtor had moved voluntarily to dismiss the adversary proceeding. For, as observed above, the absence or presence of a conflict of interest must necessarily be determined before an award of attorney's fees can be granted. When granted an opportunity to do so, Ms. Jacoway denied the allegations of the complaint in Adversary Proceeding No. AP 86–299, stating that, in her opinion, they had been "used as a hammer" to compel her to reduce any claims which she might make for attorney's fees and that she had, at or near the time of her appointment as trustee, told the debtor and his counsel that she was a friend of Judge Mixon and that she had succeeded him as trustee in several pending bankruptcy cases. She further stated that "they had absolutely no objection, then, when they thought that I was on their side." With respect to her contention of the early disclosure of these facts, the debtor and his counsel, although granted by the court an explicit opportunity to respond, did not deny these facts. Counsel for the debtor, rather, elected to ignore this statement and to admit that there was a later time when the disclosure of these facts was made to them. The court, further, gave the debtor and his counsel successive opportunities, in the course of the hearing of October 15, 1986, to prove the allegations which were made by them in the complaint in Adversary Proceeding No. Ap 86–299 through the offering of evidence. They declined each opportunity and ultimately stated that the allegations were without factual merit. And there was no evidence or indication or information that there had been any improper communications between Judge Mixon and Ms. Jacoway or that she had been in any way associated with him in law practice or business prior to his accession to the bench of the Arkansas bankruptcy court.

Otherwise, with respect to the factual bases for the respective claims for attorney's fees, Ms. Jacoway and Mr. Brown relied upon the respective detailed statements which they had filed in support of their pending applications. Mr. Smith offered his oral testimony to the general effect that he had, prior to the bankruptcy proceedings, served as counsel for the debtor; that, in that capacity, he had filed a usury action against the bank which was Mr. Westfall's principal creditor and chief economic antagonist; that both actual and exemplary damages were sought in that civil action in a total of six figures; that the pretrial proceedings in the case required extensive briefing in the state trial court and also in the state appellate court, to which the bank had repaired on at least two occasions in an effort to effect termination of the usury action; that Mr. Smith

---

**2.** In order to be entitled to awards of professional fees from a bankruptcy estate, the professional person must be "disinterested" within the meaning of section 327 of the Bankruptcy Code. A prohibitive connection with the bankruptcy judge appointing a trustee or attorney imports a lack of "disinterestedness" within the meaning of that section.

has considerable experience and expertise in usury actions and has won several large verdicts in usury cases and he regarded Mr. Westfall's usury claims as meritorious and promising; that, when it became necessary for the debtor to file for relief under the federal bankruptcy laws, Mr. Smith recommended Mr. Brown to be debtor's chapter 11 counsel; that, thereafter, in the course of the within chapter 11 proceedings, Mr. Brown advised Mr. Smith that—without Mr. Smith's prior or contemporaneous knowledge—Mr. Brown had effected a settlement of the pending usury action; and that the precise terms of that settlement could only be vaguely and indirectly adumbrated in the testimony of Mr. Smith to the effect that the settlement involved a reduction in the principal and interest due the bank and other value.[3] It is to be observed that the parties will only make full and perfect disclosure of the settlement terms after dismissal of these underlying chapter 11 proceedings when the bankruptcy court may be unable to ascertain whether the settlement is beneficial to the creditors of the bankruptcy estate.

The files and records in this case show another fact which is material to the determination of the attorneys' fees issue. Those files and records demonstrate that, on a prior occasion, the debtor, based on the allegation of a conflict of interest because of Ms. Jacoway's succeeding Judge Mixon as trustee in other cases, moved for disqualification of Judge Mixon as the judge presiding over this particular case. Judge Mixon, in an order entered on April 29, 1986, explicitly found there to be no

conflict of interest even as he transferred the case to the chief judge of the bankruptcy court for reassignment.[4] Under such circumstances, this court believes itself bound by Judge Mixon's prior ruling that there was and is no conflict of interest. The courts have previously recognized that, ideally, section 455, Title 28, United States Code, governing the disqualification of judges, and Rule 5002 of the Rules of Bankruptcy Procedure, governing the appointment of trustees by bankruptcy judges, should have the same parameters with respect to the relationship between a trustee and appointing judge. "Prior to the promulgation of (new Rule 5002) the conduct of a judge in situations where there was potential conflict was left to the sound discretion of the individual judge with certain narrow exceptions (under) Section 455, Title 28, U.S.C." *In re National Store Fixture Co.*, 37 B.R. 481, 484 (Bkrtcy.W.D.Mo.1984). Accordingly, the question of conflict of interest in this case, having been previously ruled on in a final appealable[5] decision by Judge Mixon, is not now open for another, contrary ruling by the undersigned. "The rule in most of the national courts that have passed on the question is that where a judge ... or a judge assigned to a ... Court, while a case is on his calendar, renders a decision and thereafter the case is transferred to another judge of the same court, the latter judge should respect and not overrule such decision and order." *Stevenson v. Four Winds Travel, Inc.*, 462 F.2d 899, 904, 905 (5th Cir.1972). This court, on a prior occasion in this district, has found it necessary

---

3. The court remains uncertain as to the precise contours of this settlement as the result of Mr. Smith's testimony.

4. Judge Mixon's order of April 29, 1986, was to the following effect: "The debtor, Ernest Westfall, orally moves this Court to recuse from hearing any proceedings in this case. The debtor alleges that the trustee, Hon. Jill R. Jacoway, is the successor trustee in cases in which the Court formerly occupied the office of trustee and in which, during the course of these proceedings, the Court held a financial interest. The debtor also alleges that this relationship between the Court and the trustee created a conflict of interest. *The Court does not find any*

*conflict of interest*, but because the debtor appears disturbed by the appearance that the court's financial interest in other cases in which Ms. Jacoway is acting as trustee might indicate a lack of impartiality, the Court will recuse pursuant to Bankruptcy Rule of Procedure 5004." (Emphasis added.)

5. From the file in this case it appears that the debtor filed a motion that Judge Mixon make further findings of fact to support his order of April 29, 1986. This motion was filed on May 12, 1986. But it appears that this motion was not prosecuted and that there was no appeal from the order of April 29, 1986, or other requested review.

to expound upon this principle. See *Matter of Plantation Manor Restaurant of Houma, Inc.*, 45 B.R. 229, 231 (Bkrtcy.W.D. Ark.1984), to the following effect:

"This clear rule finds its foundation in reason and common sense. A party aggrieved by one judge's ruling has a proper remedy by means of appeal to a properly-constituted appellate tribunal; the review and amendment or reversal of one coordinate judge by another can only stultify and cheapen the judicial process, encouraging litigants, at least, to indulge in a form of forum shopping which would exploit and dramatize the philosophical differences among co-equal judges and, at worst, may produce baseless allegations against judges as a means of achieving their disqualification in order to use such coordinate review as a substitute for appeal. The crippling potential for justice is obvious. 'It is a judge's duty to decide all cases within his jurisdiction and "he should not have to fear that unsatisfied litigants may hound him with litigation, charging malice or corruption." ' Campbell v. Supreme Court of Florida, 428 F.2d 449, 451 (5th Cir. 1970), quoting Pierson v. Ray, 386 U.S. 547, 554, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288 (1967)."

These principles and the considerations which underlie them, rooted as they are in respect for the judiciary, are necessary to be applied in this case. This court refuses to vest itself with a roving commission to second-guess and "correct" the decision of a fellow judge of equal rank.[6] This is especially so in view of the specific procedural facts of the case at bar in which Judge Mixon's decision is unappealed as well as final.[7]

Further, the facts of this case, as they have been made known to this court, do not warrant a finding that the appointment of Ms. Jacoway by Judge Mixon was improper as a conflict of interest. Rule 5002 of the Rules of Bankruptcy Procedure, in the following language, prohibits a bankruptcy judge's appointing as a trustee a person with whom that judge has an unreasonably close connection:

"A bankruptcy judge may not appoint a person as a trustee or examiner or approve the employment of a person as an attorney, appraiser, auctioneer, or other professional person pursuant to section 327 or section 1103 of the Code if that person is or has been so connected with such judge as to render the appointment or employment improper."

The fact that Ms. Jacoway succeeded Judge Mixon, upon his appointment to the bench, as trustee in several other cases does not alone and without more create such a relationship between the judge and Ms. Jacoway as would prevent her appointment by him as trustee in another case. The fact of being a successor trustee to a trustee whose trusteeship is terminated by ascendancy to the bench cannot, in the absence of other facts and circumstances, create a relationship between the new judge and the successor trustee within the condemnatory language of Rule 5002, *supra*. Such a relationship does not *per se* create any continuing commonality of interest, especially with respect to other cases, such as that at bar, in which Ms. Jacoway's appointment was not as a successor trustee but rather an original appointment by Judge Mixon. And, in the absence of some special factual context showing otherwise, it would ordinarily be expected that, if any relationship were created between two persons by the necessity of dividing fees in other cases, it would ordinarily be expected to be one of antipathy rather than of commonality of interest.

It is true that, in *Westfall v. Jacoway*, Adversary Action No. 86–299, the debtor, in seeking to recover damages, including

---

6. At least some of the impetus for counsel to make allegations of this type against judges and fellow members of the bar may stem from a tolerance of such accusations by the courts. This court should not and cannot count itself among those which promote the seeds of doubt with respect to the holdings of other judicial officers of equal rank.

7. It is, to say the least, "inappropriate" to raise the disqualification issue repeatedly. See *Matter of Rutherford*, 54 B.R. 784, 791 (Bkrtcy.W.D. Mo.1985).

punitive damages, from Ms. Jacoway, made allegations of the existence of other facts and circumstances, as observed above. But those allegations, as has been pointed out, are admittedly meritless. The court recognizes that there may be a semblance of *appearance* of impropriety in the appointment of someone who may have had some continuing business or legal relationship with the appointing judge and who was a friend of the same judge. But no actual impropriety has been shown. No continuing business or legal relationship is shown by the information and evidence before the court. Nor is it shown that the friendship between judge and trustee in any way worked to defeat the purpose of Rule 5002 of the Rules of Bankruptcy Procedure. Under such circumstances, the governing decisions of the appellate courts admonish the trial courts against applying rigorous *per se* rules which would seemingly require disqualification for the slightest appearance of possibility of impropriety.[8]

■ These principles are particularly applicable in a case such as that at bar, in which a judge of this court has previously made a determination that the appointment was proper and that there was no conflict of interest. If the undersigned judge is to disregard a prior order of another coordinate judge, at least a *showing of an actual impropriety* must be made. This court rejects the rule of that line of cases which seems to hold that a transferee judge may, as a matter of simple discretion, freely set aside a lawful order of a predecessor judge.[9] Such action could only encourage the type of conduct by lawyers which has here taken place, wherein scurrilous charges which admittedly cannot be proven are made against judges and other members of the bar.[10]

■ Therefore, for the foregoing reasons, the court concludes that the appointment of Ms. Jacoway as trustee and as counsel for the trustee should not be set aside and that she is therefore eligible to receive attorney's fees for the legal services which she has rendered in this case.

■ The court, further, upon initial review of the applications of counsel and on the basis of the testimony of Mr. Smith in the hearing of October 15, 1986, has determined, at least in the absence of objection by creditors, that the requests for attorney's fees are reasonable. The court has reviewed each of the detailed statements submitted by Ms. Jacoway and Mr. Brown, respectively, and may conclude that the services therein reflected support awards of fees in the magnitude requested by each of them.[11] The testimony of Mr. Smith, similarly, shows that he may be entitled to an award of fees as requested.[12] It shows that the principal series of events in this case had their beginning in Mr. Smith's filing and defending against attempts to terminate the usury action and that it was his ability and diligence which created whatever value that action has for the estate.

■ It must be mentioned in conclusion that, as orally presented to the court in the hearing of October 15, 1986, the settlement

---

**8.** Judge Mixon has so found previously and this court also so finds. "(A)pplication of the connection test is committed to the sound discretion of the bankruptcy judge who is to make the appointment or approve the employment. All relevant circumstances are to be taken into account by the court (including the nature and duration of the connection with the bankruptcy judge; whether the connection still exists, and, if not, when it was terminated; and the type of appointment or employment." Advisory Committee Note—1985 Amendment to Rule 5002 of the Rules of Bankruptcy Procedure.

**9.** Cf. *In re Couch,* 43 B.R. 56 (Bkrtcy.W.D.Mo. 1984), approving a transferee judge's setting aside of an order entered by a coordinate judge when the action taken by the judge entering the vacated order has been proper and lawful under the bankruptcy rules then in effect, see *Matter of Antuna,* 45 B.R. 271 (Bkrtcy.W.D.Mo.1985), and the enactment of new bankruptcy rules of August 1, 1983, were to be applicable retrospectively only if it were necessary to prevent injustice. See order of the Supreme Court of the United States of April 25, 1983.

**10.** See note 9, *supra.*

**11.** The element which must ordinarily be shown in order to warrant awards of attorney's fees from the estate is that of benefit to the estate. But this court has elected to resolve that issue by making the award applicable as against cash monies now in the estate and which it may be implied were produced by counsel's efforts.

**12.** See note 11, *supra.*

for which approval is sought is solely that of a total award of attorney's fees in this case, and *to the extent that there are monies in the estate as of October 15, 1986,*[13] of $7,500 to Ms. Jacoway, of $12,500 to Mr. Brown and of $17,500 to Mr. Smith. The court has no power to approve any more than this, or even to approve awards of these amounts except as they may be drawn against actual cash proceeds now existing in the estate. The court can confer no lien on estate property or prospective estate property which will inure to the benefit of counsel in the future. If there is not as of this date ready cash in the estate to pay these awards, then they must go unpaid. This court cannot project its award into a future in which these chapter 11 proceedings may no longer be pending.[14]

■ Further, on the basis of the record before it, the court is constrained to make its approval conditional on there being no written objection filed to that approval within 25 days of the date of filing of this order. It is necessary to grant the creditors another opportunity to object because neither the prior notice dispatched to them by counsel for the debtor nor the evidence, as observed above, in the hearing of October 15, 1986, clearly and with precision details the terms of the compromise and settlement of the civil action based on usury. If the creditors are content to have the court approve the attorney's fee settlement and dismiss the underlying chapter 11 case without knowing further details of the settlements, then the court will do so. It is to be observed at this point that the only disclosure of any of the terms of the settlement has come to this court only indirectly through the testimony of Mr. Smith in support of his application for attorney's fees. This court believes that, if the anticipated approval of the settlement in another court may involve substantial assets or monies, the creditors may be interested in them.

It is therefore, for the foregoing reasons,

ORDERED that the application for approval of an agreed award of attorney's fees to Jill R. Jacoway in the sum of $7,500, to R.J. Brown in the sum of $12,500, and to David Smith in the sum of $17,500 be, and it is hereby, approved to the extent that there is cash in the estate now ready to pay it, and to no other extent, in the absence of any written objection filed by any creditor within 25 days of the service of a copy hereof on them. Counsel shall, on behalf of the debtor, accomplish service of a copy hereof on all creditors. And, after having done so, counsel for debtor shall retain such evidence of service and the date thereof as will be satisfactory to the court.

---

**13.** See note 11, *supra.* Further, the court simply lacks power to make awards of attorney's fees from any source except the estate. Since the parties desire that the case be dismissed immediately after these awards are made, the court cannot now make orders which are applicable against the future assets of the debtor.

**14.** See note 13, *supra.*